JANE MARY JONES *et al.*

*v.*

THE SACRAMENTO AVENUE M. E. CHURCH *et al.*

*Opinion filed October 25, 1902.*

1. TRUSTS—*deed is the best evidence of purpose of trust.* If a deed of property to a religious corporation recites the purpose for which the property is to be held in trust, the deed is the best evidence of such purpose, and its terms cannot be varied by parol evidence, in the absence of any allegation of fraud or mistake in the bill to enforce the trust.

2. SAME—*effect where trust provisions are properly released.* If property conveyed to a religious corporation by a deed reciting the purpose of the trust is subsequently sold by the society and the trust provisions are properly released by the proper church authorities, the mere purchase of other property for the church with the proceeds of the sale does not impress the property with a trust of the same character as the original one.

3. RELIGIOUS SOCIETIES—*sufficiency of notice of meeting to authorize conveyance of church property.* Notice of a meeting of the members of a church to vote upon conveying the church property is sufficient if it is given in accordance with the church rules.

4. SAME—*when resolution to convey property must be held to have been adopted.* A resolution to convey church property must be held to have been authorized where the church records show that it was adopted by a vote of six to five, even though one alleged member asked to have her vote recorded in the negative, but when objection was made to her vote did not press the point to decision, but yielded to the challenge and suffered the question of her right to vote pass undecided.

APPEAL from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

The appellants filed their bill in equity in the circuit court of Cook county, alleging that they were members in good standing of the First Welsh Methodist Episcopal Church of Chicago (sometimes called the "Bethany Church") and had a beneficial interest in its property, and upon grounds set up in the bill as amended asked the court to declare a trust in favor of said church in certain

property then claimed, occupied and used by the appel-
lee the Sacramento Avenue Methodist Episcopal Church
of Chicago, and to set aside a deed of conveyance of such
property from the first mentioned to said last mentioned
church.    After answer and replication there was a hear-
ing and the court dismissed the bill for want of equity,
whereupon complainants took this appeal to this court.

It appears that in 1888 Mrs. Mary Williams, a native
of Wales but a resident of Chicago and a devoted mem-
ber of the Methodist Episcopal Church, desiring to pro-
mote the religious welfare of the Welsh people residing
in Chicago, through the agency of her pastor, Rev. Wil-
liam R. Griffiths, purchased two lots and a church build-
ing thereon as a place of worship.  Prior to the execution
and delivery of the deed to the property, the Welsh
people who had previously been conducting services as
a voluntary organization on VanBuren street, organized
themselves into a corporation under the statute of Illinois
by the name "First Welsh Methodist Episcopal Church
of Chicago."    Immediately after perfecting the corpo-
rate organization the title to the property purchased was
taken in the name of the corporation by Mr. Griffiths,
the same being paid for with the money furnished to him
by Mrs. Williams.    In the deed there was contained a
paragraph from the Book of Discipline of the Methodist
Episcopal Church of the United States, declaring, in sub-
stance, that the property should be held in trust for the
use of the ministers and membership of the Methodist
Episcopal Church in the United States.    The property
acquired by the above deed was subsequently sold to the
board of education of the city of Chicago for the sum of
$9000, and at the time of this sale the said trust above
mentioned was released by deed duly executed.  The sale
to the city was exclusive of the building, and thereupon
the First Welsh Methodist Episcopal Church purchased
lot 10, in block 3, in James Couch's subdivision, etc., and
the church building was removed and placed upon this

lot, and the $9000 received from the sale of the first two lots purchased with the funds furnished by Mary Williams was used in payment for said last named property and in the improvement of the same.   The First Welsh Methodist Episcopal Church continued to occupy the premises last mentioned, with the improvements thereon, until on or about the 20th day of October, 1900, when the trustees of said church conveyed the property to the appellee the said Sacramento Avenue Church, by the deed sought to be set aside in this case.   This deed purported to have been made by the authority and direction of said First Welsh Methodist Episcopal Church.   The records of the church showed the adoption of a resolution at a meeting of the church held October 6, 1900, purporting to authorize and direct the trustees to make the conveyance and also to provide for a consolidation of the church with said appellee church.   The resolution contained, among others, the following recitals:

"Whereas, the time has come when the members of the Bethany Methodist Episcopal Church of Chicago, Illinois, who use the Welsh language, think it not wise or expedient to continue longer as a distinct and separate congregation, seeing that those composing the membership of the Bethany Methodist Episcopal Church understand the English language and can be edified therein; and whereas, the Sacramento Avenue Methodist Episcopal Church of Chicago, Illinois, of the same faith and order as ourselves, is willing to afford to us all the privileges of worship and membership to which we have been accustomed; and whereas, by the consolidation of our membership with the membership of the Sacramento Avenue Methodist Episcopal Church all the ends of our association together as a church organization can be fully met, and with greater economy and success than by continuing as a separate organization."   Then followed the resolution authorizing the conveyance and recommending the consolidation of the two churches.

DANIEL V. SAMUELS, and JOHN T. RICHARDS, for appellants.

FREDERICK PEAKE, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The first assignment of error insisted upon by appellants is, that the original purchase of the church property was made by Mrs. Williams for the exclusive use and benefit of the Welsh people of Chicago as a place for religious worship, and that said property was impressed with a trust for that purpose, and that the sale to the appellee church of the building and the subsequently acquired lot, to which the building had been removed, and which had been purchased with the proceeds of the sale of the lots purchased by Mrs. Williams, was a violation of the trust and an unauthorized diversion of the trust property to other uses, and that therefore such sale and conveyance should be set aside. We regard this position as wholly untenable. The deed to the church property purchased by Mrs. Williams recited that the grantor, for and in consideration of $5100 paid by Mrs. Mary Williams as a donation and gift, "does hereby sell, grant and convey unto the First Welsh Methodist Episcopal Church of Chicago the following described property," etc.; and the *habendum* clause was as follows: "To have and to hold to said grantee, its successors and assigns, forever in trust, that said premises shall be used, kept and maintained as a place of divine worship for the use of the ministers and membership of the Methodist Episcopal Church in the United States of America, subject to the discipline, usage and ministerial appointments of said church as from time to time authorized and declared by the general conference of said church and the annual conference within whose bounds the said premises are situate."

There is no evidence in the record that any fraud was practiced upon Mrs. Williams in the wording of the deed, or that the trust declared by the deed failed to express

the trust which she intended to create; nor, indeed, would any such evidence have been admissible under the bill. The bill did not seek to reform the deed, but on this branch of the case merely sought to have a different trust declared than the one created by the plain terms of the instrument itself. The deed was the best evidence of her intention, and its terms cannot be varied by parol proof. The trust declared by the deed to the Welsh church was, that the premises should be used, kept and maintained as a place of divine worship, for the use of the ministers and membership of the Methodist Episcopal Church in the United States. It is not contended, however, that this trust was not properly released by the proper church authorities when the two lots were sold and conveyed to the city authorities, but only that when the proceeds of the sale were invested in said lot 10, and title thereto was taken to said Welsh church and the church building removed to said lot, the property so acquired became subject to the alleged trust in favor of the Welsh people of Chicago who were or should become members of said church, as and for a place of divine worship. The deed of said lot 10 to said Welsh church contained no trust features or limitations of any character. It is therefore obvious that the Welsh church was free to sell and convey the property in accordance with the rules of the church and the laws of the State.

It is, however, contended, in the second place, that the trustees of the Welsh church conveyed the church property to said Sacramento Avenue Church without any direction or authority from the congregation, church or society, as required by section 43 of the act concerning religious corporations. (Hurd's Stat. 1899, p. 441.) It is also said that no sufficient notice was given of the meeting of the members to consider the question, and that the resolution to consolidate the said Welsh church with the said Sacramento Avenue Church and to convey its church property to the said last named church, was not

adopted by a majority of the members present at the
meeting, but that only six of such members voted for
the resolution; that five voted against it and that an-
other member asked to have her vote recorded against
it, but that her vote was refused on the alleged ground
that she was not a member of the church in good stand-
ing.  The records of the church given in evidence show
that the resolution authorizing the consolidation of the
church with the appellee church and directing the trus-
tees to make the conveyance was adopted by a vote of
six for to five against, and such records contain no ref-
erence to any offered vote.  The records of the church
also show that the alleged member whose vote it is said
was wrongfully rejected had been dropped from the roll
of membership for non-attendance and non-support.  The
evidence tended to show that she had ceased to attend
upon the services of the church and had declared her
purpose never to have anything more to do with the
Methodist church, and that when objection was made
to her vote when she offered it, she did not press the
question raised to a decision, but suffered it to pass un-
decided.  We are not advised by the record what law of
the society was applicable to such a case, and we cannot
therefore say that her vote was wrongfully excluded and
that the resolution was not, in fact, duly adopted.  Even
if entitled to vote, she cannot be heard to complain in
this case if she yielded to the challenge and her vote
was not in fact rejected.  The deed made by the trustees
and sought to be set aside recited that it was made by
authority and direction of said First Welsh Methodist
Episcopal Church, given by said resolution, adopted at
a meeting of the church held October 6, 1900.  The rec-
ord also shows that due notice of the meeting had been
given in accordance with the rules of the church, and
that was all that was necessary.  The conveyance of the
property was also authorized by the quarterly confer-
ence, in accordance with the discipline and practice of

the Methodist Episcopal Church, and counsel for appellees contends that such authority was sufficient without that derived from the vote of the meeting of the church membership. Inasmuch, however, as such vote was had, we deem it unnecessary to consider whether or not the conveyance would have been good without it.

We need not consider the question raised as to the sufficiency of the notice of the meeting to authorize a consolidation of the two corporations under the statute. It is sufficient for the disposition of the case that the deed was duly authorized and effected the transfer of the title to the property.

Finding no error the decree will be affirmed.

*Decree affirmed.*