(No. 17630.—Decree affirmed.)
WILLIAM KOCHORIMBUS, Appellee, *vs.* CONSTANTINOS C. MAGGOS, Appellant.

*Opinion filed October 28, 1926—Rehearing denied Dec. 16, 1926.*

1. TRUSTS—*the Statute of Frauds does not apply to resulting or constructive trusts.* The Statute of Frauds does not apply to resulting or constructive trusts, as such trusts are expressly excepted from the operation of the statute.

2. SAME—*when a constructive trust will be raised.* A constructive trust will be raised where a person clothed with some fiduciary character by fraud or otherwise gains something for himself, either where the actual fraud is considered as equitable ground for raising the trust or where the existence of a confidential relation and subsequent abuse of the confidence reposed is sufficient to take the case out of the Statute of Frauds.

3. SAME—*constructive trust will be created without regard to intention—fraud.* Constructive trusts are raised by equity for the purpose of working out right and justice where there was no intention of the parties to create a trust relation and often directly contrary to the intention of the party holding the legal title, all cases of such trusts being referred to what equity denominates fraud, either actual or constructive.

4. SAME—*when confidential relation is created.* A fiduciary relation is not limited to cases of trustee and *cestui que trust* or other recognized legal relation, but a party may voluntarily assume a confidential relation towards another, and if he does so and thereby acquires influence he cannot abuse the confidence reposed in him nor thereafter do any act for his own gain at the expense of the relation.

5. SAME—*parol agreement will not preclude resulting or constructive trust.* While neither an express trust nor a resulting trust can be created by parol agreement, such an agreement will not prevent a trust arising where the transaction is such that at the moment the title passes either a resulting or constructive trust would arise in the absence of any agreement, and the intention of the parties in the premises may be shown by proof of the parol agreement in accordance with which the title is taken.

6. SAME—*when equity will imply constructive trust and require purchaser to carry out agreement with co-purchaser.* Where a contract for the purchase of real estate is drawn with the names of two parties as purchasers, one of whom negotiated the transaction and the other furnished the money, agreeing to loan his co-

purchaser one-half of the purchase price, to be re-paid out of the latter's share of the rents and profits, but the name of the co-purchaser is stricken for the ostensible purpose of enabling the other to secure a loan on the property, equity will imply a constructive trust and compel the party in whose name the title was taken to carry out his agreement with his co-purchaser and convey to him an undivided half of the property.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

HARRY C. KINNE, for appellant.

CLAUDE F. SMITH, and HOPKINS, STARR & HOPKINS, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

June 22, 1923, appellee, as complainant, filed his verified amended bill of complaint in the superior court of Cook county against appellant, as defendant, alleging that on May 1, 1921, complainant became interested as a prospective purchaser in lots 13, 14 and 15 in Millard's re-subdivision of block 24 in Ashland's Second addition to Chicago, together with the one-story brick building located thereon, known as Nos. 1814 to 1824 West Harrison street; that from then until May 1, 1922, he frequently viewed the premises, watched the growth of business and counted the number of people passing by and visiting the property; that he estimated the value of the property and determined to negotiate for the purchase of the same; that he spent $300 and $2000 worth of time in the investigation; that on May 1 he ascertained that he could purchase the property for about $40,000 and could secure a loan thereon for $22,000; that he informed defendant of his investigation and of the great profits to be derived from the purchase and operation of the property and that he was about to negotiate for the purchase thereof and get a loan thereon; that he told defendant that as they were friends and relatives and as complainant had confidence in defendant he

would take defendant in on the deal if he would furnish the purchase price therefor, one-half of which should be a loan to complainant; that defendant then verbally offered to do so and secure with complainant a conveyance of the property to them both as equal owners, both parties after the purchase to execute a note secured by a trust deed thereon for an amount equal to complainant's share of the purchase price; that complainant was to later pay the note from his share of the rents and profits and the operation of the building and from other independent sources, all of which offer complainant accepted; that he and defendant agreed to thereafter start and conduct a candy and flower store and restaurant in the corner store of the building, rent the other five stores and divide equally the expenses and profits thereof; that pursuant to the agreement the parties met on May 16, 1922, to execute a contract for the purchase of the real estate containing the names of both complainant and defendant, previously drawn at the request of both of them; that defendant requested complainant to consent to the elimination of complainant's name from the contract and to permit defendant, while advancing the purchase price and loaning to complainant one-half thereof, to take the title in his name alone, so that he might the more easily secure a loan thereon for the amount of complainant's share of the purchase price and expenses incurred in connection therewith; that complainant could later, instead of paying his share of the purchase price to defendant, pay the loan to be made by defendant, with interest, from complainant's share of the rents and profits from the building and the conduct of the store and restaurant and from independent sources; that defendant again promised, after securing such loan, to convey to complainant an undivided one-half interest in the property and start and conduct with complainant the candy, flower and restaurant business, to all of which complainant, trusting in the promises of defendant, agreed; that defendant, by his attorney, there-

upon ran a pen through complainant's name and changed the word "purchasers" to "purchaser" throughout the contract; that defendant then signed the contract and later received a deed to the premises, and thereafter, on July 18, 1922, secured a loan of $20,000 secured by a trust deed thereon, in accordance with complainant's agreement with defendant; that on August 1, 1922, complainant demanded from defendant a deed conveying an undivided one-half interest in the property as above agreed to, but defendant refused and still refuses so to do, and told complainant that he (defendant,) now had title to the premises and intended to keep it; that complainant has known defendant for twenty years, their wives being cousins; that defendant did not know of the property or the great value thereof or the profits to be derived from the purchase and operation of the same, or of the time and money spent by complainant in investigating the property, until informed by complainant; that because of his long acquaintance with and relationship to defendant he reposed confidence in him and well believed that he would perform his promises and agreement, which confidence was greatly abused and a fraud thereby perpetrated by him on complainant, by which defendant has obtained a great advantage in the property at the expense of complainant; that by reason of the rapid and expansive growth of the community surrounding the property and the great development of business therein the property has greatly increased in value since complainant began to investigate the same; that the street on which the property abuts has been, and now is, one of the principal business streets of the locality and the real estate is now worth at least $80,000; that complainant having expended much time and money in investigating the property and having secured from defendant a loan for one-half the purchase price thereof, had, and now has, an interest therein on account of the agreement with and loan from defendant and had great expectations of large profits from the pur-

323—33

chase and operation of the same; that a trust ought to be declared by the court holding defendant to be a trustee of the legal title to the property to the extent of complainant's interest therein, and that he should be compelled to convey to complainant, on such terms as the court may designate, an .undivided one-half interest therein; that an accounting ought to be had as to the rents and profits from the property since the purchase thereof, and that defendant ought to be enjoined from collecting the rents therefrom and applying the same to his own use and a receiver be appointed to take charge of the property; that complainant is ready, willing and able to carry out his part of· the agreement and to assume all of the obligations relative thereto, and hereby offers to pay to defendant one-half of the purchase price of the property, $21,000, together with interest thereon, one-half the commission of $1300 paid by defendant at the purchase thereof and one-half of any expenses to which he· has been put because of his payment of the note for $20,000, secured by trust deed on the property, and a conveyance by him to complainant of an undivided one-half interest in the same, or in case the note and trust deed can not be paid before maturity thereof, then complainant offers to pay the same at its maturity and to pay one-half of the commission and other expenses pursuant to the order of the court, or he offers to pay, under any feasible arrangement, what, if anything, shall appear to be due from him, and prays for a decree accordingly.

The answer of defendant neither admits nor denies that complainant became interested as prospective purchaser of the real estate in question on May 1, 1921; admits that defendant did execute a contract for the purchase of the real estate in question in his own name and that he did purchase the same, and alleges that complainant caused his name to be inserted in the contract in question as one of the purchasers thereof without the knowledge of defendant and for the sole purpose of making it appear that he was

one of the actual purchasers of the real estate; admits that on June 12, 1922, defendant received a deed to the real estate and secured a loan thereon for $20,000 on July 18, 1922, secured by trust deed; admits that he has known complainant for a number of years and that their wives are cousins, but specifically denies each and every other allegation tending to show that complainant is entitled to relief, and sets up the Statute of Frauds as an additional defense.

The cause was referred to a master in chancery, who, after hearing the evidence, found the controverted questions of fact in favor of complainant and recommended that a decree be entered in accordance with the prayer of the amended bill of complaint. Objections were entered to the master's report, which being overruled, an order was entered that they stand as exceptions to the report. The cause being heard by the court, a decree was entered in accordance with the master's report, finding that defendant was a trustee for complainant and held the title to an undivided one-half of the premises in trust for him and decreeing that defendant execute a deed conveying the undivided one-half interest in the property to complainant, subject to the trust deed securing the sum of $20,000, and that such deed be delivered to complainant upon his paying the sum of $11,650 in cash, with interest at six per cent from June 12, 1922. From this decree an appeal has been perfected to this court.

Complainant testified in detail to all of the material facts set out in his bill of complaint, and he was corroborated as to the original agreement between himself and defendant by the two real estate men through whom they were negotiating the deed, and also by the fact that the original contract, when produced at the office of the attorney for the signatures of the contracting parties, contained the names of complainant and defendant as purchasers, and the plural word "purchasers" was used throughout the con-

tract. The contract upon its face shows that complainant's name was crossed out and the word "purchasers" changed to "purchaser." Appellant's contention that complainant caused his name to be inserted in the contract as one of the purchasers without the knowledge of defendant, as set up in his answer, is nullified by his statement on cross-examination: "I told Krumrine [the real estate man] to go ahead and make the papers in the name of William and myself." As to what took place at the attorney's office at the time of the signing of the contract of purchase there is a conflict in the testimony. Defendant testified that he had never agreed to loan complainant one-half of the purchase price, and that when he discovered at the attorney's office that complainant did not have his share of the purchase price, on the advice of his attorney he had the contract changed to his own name and complainant consented to drop out of the deal. In this contention he is partially corroborated by his attorney, but complainant's version of what there took place, as set forth in the bill, is corroborated by all the other witnesses present. The master saw and heard the witnesses and upon the controverted questions of fact found in favor of complainant, and the evidence in the record sustains his findings.

It is contended by appellant that the decree in this case must be reversed on account of a variance between the evidence and the allegations of the bill as to the agreement between appellant and appellee and the relief granted by the decree. This is not a decree for the specific performance of a contract between appellee and appellant or a decree to enforce an express trust. The evidence shows that appellant obtained the legal title to the property in question by virtue of a confidential relation and influence under such circumstances that he ought not, according to the rules of equity and good conscience, to hold and enjoy the beneficial interests of the property to the exclusion of appellee, and the court, in order to administer complete justice between the

parties, by its decree raised a trust, by construction, out of such circumstances and relations, converted appellant into a trustee of the legal title and ordered him to execute the trust in such manner as to protect the rights of appellee. In no event, however, could appellant be heard to complain of this variance, as the terms of the decree are much more favorable to him than the terms of the purported agreement between appellee and appellant.

It is contended by appellant that even if complainant's version of the transaction were true, in view of the Statute of Frauds and the rule with reference to trusts no valid trust is shown by the evidence. The Statute of Frauds does not apply to resulting or constructive trusts, as such trusts are expressly excepted from the operation of the statute. A constructive trust is one that arises where a person clothed with some fiduciary character by fraud or otherwise gains something for himself. (*Pope* v. *Dapray,* 176 Ill. 478; *Reed* v. *Reed,* 135 id. 482.) "If a person obtains the legal title to property by such arts or acts or circumstances of circumvention, imposition or fraud, or if he obtains it by virtue of a confidential relation and influence under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interest of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust, by construction, out of such circumstances or relations; and this trust they will fasten upon the conscience of the offending party and will convert him into a trustee of the legal title, and order him to hold it or execute the trust in such manner as to protect the rights of the defrauded party and promote the safety and interests of society." (Perry on Trusts,— 6th ed.—sec. 166; *Kern* v. *Beatty,* 267 Ill. 127; *Allen* v. *Jackson,* 122 id. 567.) Constructive trusts are raised by equity for the purpose of working out right and justice where there was no intention of the party to create such

a relation, and often directly contrary to the intention of the one holding the legal title. All instances of constructive trusts may be referred to what equity denominates fraud, either actual or constructive, including acts or omissions in violation of fiduciary obligations. (*Roche* v. *Roche,* 286 Ill. 336.) Constructive trusts are divided into two general classes: one consisting of those cases in which actual fraud is considered as equitable ground for raising the trust, and the other of those cases in which the existence of a confidential relation, and subsequent abuse of the confidence reposed, are sufficient to take the case out of the Statute of Frauds. (*Miller* v. *Miller,* 266 Ill. 522.) A party may voluntarily assume a confidential relation towards another, and if he does so he cannot thereafter do any act for his own gain at the expense of that relation. (*Reed* v. *Peterson,* 91 Ill. 288.) A fiduciary relation is not limited to cases of trustee and *cestui que trust,* guardian and ward, attorney and client, or other recognized legal relation, but it exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The origin of the confidence is immaterial. It may be moral, social, domestic or merely personal. If the confidence, in fact, exists, is reposed by the one party and accepted by the other, the relation is fiduciary, and equity will regard dealings between the parties according to the rules which apply to such relation. (*Higgins* v. *Chicago Title and Trust Co.* 312 Ill. 11.) While neither an express trust nor a resulting trust can be created by parol agreement, yet where the transaction·is such that at the moment the title passes either a resulting or constructive trust would arise in the absence of a parol agreement, such an agreement will not prevent a trust arising. (*Smith* v. *Smith,* 85 Ill. 189; *Wallace* v. *Carpenter,* id. 590; *Williams* v. *Brown,* 14 id. 200.) The intention of the parties in the premises may be shown by proof of the parol agreement in accordance with which the title is taken.

(*Furber* v. *Paige,* 143 Ill. 622.) When these rules are applied to the facts of this case it must be held that the acquisition by appellant of the property in question for his own use and the exclusion by him of appellee from participation therein created a constructive trust in favor of appellee, as found by the decree.

The decree of the superior court of Cook county will therefore be affirmed.

*Decree affirmed.*