(No. 20481.—

HARRY M. ENGLESTEIN, Appellant, *vs.* LOUIS MINTZ, Appellee.

*Opinion filed June 18, 1931—Rehearing denied October 7, 1931.*

DENEEN, HEALY & LEE, and SAMUELS, LAWTON & WIT-
TELLE, (HARRY W. LIPPINCOTT, and SAMUEL T. LAWTON,
of counsel,) for appellant.

COOKE, SULLIVAN & RICKS, and RATHJE, WESEMANN,
HINCKLEY & BARNARD, (EDWIN HEDRICK, ADOLPH H.
WESEMANN, and EDMOND W. HEBEL, of counsel,) for ap-
pellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the
court:

Appellant seeks review of a decree of the circuit court
of Cook county dismissing his bill for want of equity. The
bill charges that some time prior to April 15, 1920, as a re-
sult of complainant's efforts as real estate broker, one Her-
man Kaplan and appellee contracted to purchase a certain

apartment building from one Harry L. Irwin for a total sum of $133,500, of which $30,000 was to be paid in cash, the mortgage already on the premises of $23,000 to be assumed and a purchase money mortgage for the balance of $80,500 was to be executed by the purchasers. The bill alleges the following as the facts:

Complainant was familiar with the terms and conditions of the contract and arrangement by which Mintz and Kaplan purchased the property. Each was to advance $15,000 in cash. Mintz thereafter declined to go through with the purchase on the ground that neither he nor his wife had sufficient confidence in it, but stated to complainant that he would proceed if complainant would become a partner with him in the transaction and purchase with him the undivided one-half interest which Mintz had expected to purchase from Irwin, subject to the terms of the contract between Kaplan and Mintz on the one part and Irwin on the other. Mintz stated that he would not proceed with the contract unless complainant would become a partner with him on equal terms in the purchase of the one-half interest. Mintz called upon Kaplan and asked him if it would be satisfactory to Kaplan if complainant became interested with Mintz as a partner in the purchase of the undivided one-half interest, and Kaplan stated that he had no objections thereto, and Mintz and complainant thereupon executed an agreement in writing, copy of which was attached to the bill. At the time the agreement between complainant and Mintz was signed the agreement between Mintz and Kaplan had not been executed but on the same day the deal was consummated and Mintz and Kaplan entered into an agreement between themselves, copy of which agreement was attached to the bill. The bill further alleges: Since the execution of the Mintz-Englestein contract the latter had paid to Mintz all sums required to be paid and had discharged all other duties arising under the contract. On or about April 15, 1921, Kaplan notified Mintz of his de-

sire to sell his interest in the property. Complainant is informed that the price was $158,500, subject to mortgage encumbrances of $103,500. Mintz and his wife, Dora, purchased Kaplan's interest, taking title as joint tenants and refused to permit complainant to join in that purchase. Complainant filed for record in the recorder's office of Cook county an affidavit setting forth his claims to a right 'to purchase one-half of the Kaplan interest in the real estate. Complainant thereafter made persistent efforts to pay one-half of the entire expense of the operation of the building, and made tender of the amount necessary to pay for one-half of the Kaplan interest. Mintz refused to permit him to do so or to take the tender. The property has increased in value. Complainant offers to do equity, and prays that Louis Mintz and Dora Mintz, his wife, be decreed to hold an undivided one-half of the Kaplan interest in trust for the complainant, subject to the payment by complainant of one-half of the money paid out or expended in the purchase of the Kaplan interest, and for general relief. These are, in substance, the allegations of the bill.

A demurrer was filed to the bill and overruled and the defendant Mintz answered, stating that the complainant was a broker for Irwin, the vendor, and in nowise employed by defendant; denying the material allegations of the bill, and stating that the agreement between Kaplan and Mintz was entered into prior to the execution of the agreement between Mintz and Englestein. Defendant Dora Mintz also answered the bill. She died before the hearing before the master, the suit was abated as to her, and appellee, as joint tenant with her, became the sole owner and defendant. The bill was filed on the 18th day of November, 1921, and the order abating the suit as to Dora Mintz was entered on December 19, 1928. The complainant thereafter filed an amended and supplemental bill, in which he set out in detail the allegations of the first bill and stated that he had paid for the interest in the property which he had purchased

from appellee and stood ready to pay one-half of the expense of acquiring the Kaplan interest and to do equity, and prayed that appellee be found to hold an undivided one-half of the interest purchased by him from Kaplan in trust for complainant, and for general relief.

The master to whom the cause was referred heard evidence and recommended that the prayer of the amended and supplemental bill be granted. Exceptions to the master's report were sustained by the chancellor and appellant's bill dismissed for want of equity.

The agreement between Mintz and Kaplan, referred to in this opinion as the Mintz-Kaplan agreement, executed between them and their wives, states: "That whereas, the said Herman Kaplan and Louis Mintz have this day purchased and have taken title as tenants in common to the following described premises [describing them]; whereas, by reason of the joint ownership of the said above described premises it is desirous that a definite understanding be had between the parties hereto with reference to handling the income from said premises, management of said premises and renting and sale of said premises, it is therefore agreed as follows:" The agreement following consists of nine clauses. The first has to do with the collection of rents, and provides that they shall be collected by Mintz and deposited in a named bank within twenty-four hours, and that no money shall be withdrawn from the account unless there be sufficient on hand to pay the current year's taxes and the semiannual interest and all current bills, and then only upon the signature of Mintz and counter-signature of Kaplan. The second clause provides that the guaranty policy and title papers shall be held by Mintz, with the right to Kaplan to examine them at all reasonable times and to have full information from Mintz as to his dealings with the premises. The third clause provides that Mintz keep a correct account of the management of the premises, rents and disbursements and all transactions and that Kaplan have at all times

free access to examine the same. By the fourth paragraph it is provided that neither of the parties shall rent the premises, or any part of the same, without the consent "of the other one of the parties hereto," and that any dispute arising between them should be left to arbitration as in the contract provided. The fifth paragraph is as follows: "It is distinctly understood and agreed by and between the parties hereto, that either one of the parties hereto shall have the right to sell his undivided one-half interest in the above described premises, provided, however, that in the event either one of the parties hereto offers his interest for sale, the other one of the parties hereto shall have the opportunity to purchase the same. Evidence of the intention on the part of either one of the parties hereto to sell must be communicated to the other in writing, stating the price and terms on which he is willing to sell, and the option of the other must be exercised in writing within thirty days from the date of receipt of such notice or intention to sell." The sixth clause is as follows: "It is further understood and agreed between the parties hereto that in the event either one of the parties hereto secures a purchaser for the entire premises at a profit of not less than $25,000 and is desirous of making a sale and the other one of the parties hereto withholds his consent to the same then the matter shall be left to arbitration, as hereinafter provided." The seventh clause provides that before any additions, alterations or remodeling of the premises shall be made the consent of both of the parties hereto is required, and in event they are unable to agree the matter shall be left to arbitration. The eighth clause provides that an account shall be stated on May 1 of each year, and after the payment of taxes, interest and current expenses any moneys on hand shall be divided between the parties in equal parts, "that is to say, one-half to Louis Mintz and one-half to Herman Kaplan." The ninth clause provides for arbitration of any dispute arising between the parties concerning any of the

matters covered by the contract or any other matters not specifically mentioned, and names the persons who are to act as referees. This section also provides that the referees shall have power to name an umpire, whose decision shall be binding on all parties.

The contract between appellee and appellant, executed the same day as the Mintz-Kaplan contract, is as follows:

"Louis Mintz, together with Herman Kaplan, is purchasing from Harry L. Irwin the following described premises for the sum of one hundred thirty-three thousand five hundred dollars ($133,500): [Description of premises.] The terms of sale are as follows: Thirty thousand dollars ($30,000) in cash and the balance in a mortgage running for a period of ten (10) years, with a pre-payment each year, the first pre-payment eighteen (18) months after date. Louis Mintz is to receive an undivided one-half interest to the property. Harry M. Englestein agrees to immediately re-purchase, upon contract, from Louis Mintz an undivided one-fourth interest of the above described premises, and Harry M. Englestein is to pay to Louis Mintz all he receives from Harry L. Irwin as commissions within twenty-four hours after the receipt of same, and the difference between what he receives as commissions and $7500 Harry M. Englestein agrees to pay to Louis Mintz within one year from date, evidenced by a note bearing interest at the rate of seven per cent (7%) per annum, payable semi-annually. Harry Englestein is also to agree to pay, when due, one-half of the obligation assumed by Louis Mintz in connection with the purchase from Harry L. Irwin, and is to contribute one-half of the obligation of the said Louis Mintz towards the maintenance and carrying charges of the said building, and in the event of any alteration or repairs, is to pay one-half of the obligation of Louis Mintz. In case of the failure of Harry M. Englestein to make either of the payments, or any part thereof, hereinabove mentioned, this agreement shall be forfeited and deter-

mined, and Harry M. Englestein shall forfeit all payments made by him hereunder and such payments shall be retained by Louis Mintz as full satisfaction and in liquidation of all damages by him sustained. It is understood that the said undivided one-half interest to the property is and shall remain in Louis Mintz, and the said Harry M. Englestein shall be entitled to a conveyance to him of an undivided one-fourth interest of. the property after the said Harry M. Englestein has contributed an additional sum of ten thousand dollars ($10,000) on the principal. Harry M. Englestein is to assume one-half of the obligations assumed by Louis Mintz. Harry M. Englestein is to pay one-half of the attorneys' fees incurred by Louis Mintz in connection with the purchase of the said property from Harry L. Irwin. In the event the commission from Irwin is less than $5800, then said Harry M. Englestein is to pay to Louis Mintz, forty-eight hours after date, the deficiency. This agreement is subject to agreement this day entered into between Kaplan and Mintz and all covenants and agreements therein mentioned. Louis Mintz is to collect rents and handle building but without any charge for his services. All matters in dispute to be left to arbitration and no action to be taken by either party until decision of arbiter. Thirty-day option to either party before sale. No legal action to be taken by either party for partition unless with consent of parties hereto."

The sole question in this case is whether appellant has the right to share in the purchase of the Kaplan interest. The clause of the Mintz-Englestein contract, about which the argument of counsel and the determination of this suit largely centers, is as follows: "This agreement is subject to agreement this day entered into between Kaplan and Mintz and all covenants and agreements therein mentioned." Counsel for appellant have argued many questions concerning the construction of this contract and its relation to the Mintz-Kaplan contract, but their contentions are primarily

two: First, that the relationship between appellant and appellee established by the Mintz-Englestein contract is that of trustee and *cestui que trust;* and second, that the provision of that contract just quoted, and which is referred to in the argument and in this opinion as the "subject-to" clause of that contract, is not one of subordination but is a contractual obligation between the parties, by which appellant assumes one-half of the burdens of the Mintz-Kaplan contract and is entitled to share in all the benefits of the same. It is claimed that these facts establish a constructive trust, and that the clear intent of the parties, as gathered from the contract and the surrounding circumstances, was that the "subject-to" clause in the Mintz-Englestein contract should be considered one of contractual obligation and not one of subordination to the Mintz-Kaplan contract. The arguments of counsel on both sides, while following many ramifications, center about these contentions.

It is readily observed by reading the Mintz-Englestein contract that it does not provide in terms that appellant shall share in the purchase by appellee of Kaplan's one-half interest in the property, should Mintz purchase it. Therefore, if a trust relationship exists it must be a trust which a court of equity will raise where the circumstances require its establishment. A court of equity will raise a constructive trust, even where there is no fraud, whenever the circumstances of the transaction are such that the person who takes the legal estate may not enjoy the beneficial interest therein, as against the other party to the transaction, without violating some established principle of equity. *Kochorimbus* v. *Maggos,* 323 Ill. 510; *Miller* v. *Miller,* 266 id. 522.

Appellee offered no evidence. Appellant sought to introduce before the master evidence of various conversations occurring between himself and appellee prior to the execution of the agreement. Under the well settled rule that prior conversations are deemed to have been merged in the contract entered into, the master very properly refused to

hear evidence of such conversations. The evidence does show, however, that appellant was the broker who sought to bring about the sale of the apartment building here involved to Mintz and Kaplan, and that he knew, prior to the purchase of the property by Mintz and Kaplan, the terms of their agreement, which had been written up though not signed until later. It is styled herein the Mintz-Kaplan agreement. It also appears that appellant, because of Mintz's later refusal to take one-half of the premises, agreed to purchase one-half of Mintz's interest as soon as the Mintz-Kaplan purchase was completed. It also appears that Kaplan was informed of the proposed arrangement between Englestein and Mintz and consented thereto.

Counsel for appellant do not argue that the Mintz-Englestein contract created a trust. Their argument is that a constructive trust arises. Of course, if a trust was created by the contract it would be an express rather than a constructive one. It is argued that because Englestein is required under the Mintz-Englestein agreement to share one-half of the expenses of Mintz in the purchase and care of the property while Mintz holds the title to one-half of the property, a constructive trust arises out of the relations of the parties which will not permit Mintz to make an advantageous contract with Kaplan as to the remaining interest in the property without permitting Englestein to share therein. While the bill alleges the existence of a partnership between Mintz and Englestein there is no proof supporting that allegation and it is not here argued that a partnership existed.

The rule pertaining to the establishment of a constructive trust is, that such a relationship arises outside the scope of the Statute of Frauds requiring contracts relating to real estate be in writing, and the court will not declare such a trust unless the proof is so unequivocal and unmistakable as to lead to but one conclusion. (*Thanos* v. *Thanos,* 313 Ill. 499; *Winkelman* v. *Winkelman,* 307 id. 249.)

It is not charged by appellant that appellee refused to perform any of the provisions of the Mintz-Englestein contract. Nor does a constructive trust arise merely because of the breach of a contract. (Pomeroy's Eq. Jur.—4th ed.—secs. 1044-46; *Kochorimbus* v. *Maggos, supra; Miller* v. *Miller, supra.*) It is argued, however, that since by the Mintz-Englestein contract Mintz was to hold the legal title to Englestein's interest in the property a trust relationship arose which would not permit him to use the subject matter of that trust for his own benefit, alone. The argument is, that since Englestein was compelled to sustain one-fourth of the burden of any loss in connection with the property he was equitably entitled to receive one-half of the benefits that might arise from the ownership of Mintz. The rule is invoked that in a contract of sale the vendor is regarded as trustee of the naked title for the benefit of the vendee, and the vendee, as trustee of the purchase money, for the benefit of the vendor. This rule is well established in this State. (*Rhodes* v. *Meredith,* 260 Ill. 138; *Robinson* v. *Appleton,* 124 id. 276.) It is not the rule, however, that a ·fiduciary relation exists between such parties by reason of such trusteeship. While there are relations which from their nature imply duties and obligations and are fiduciary in their character, such as those of trustees and *cestuis que trustent* of an active trust, guardian and ward, principal and agent, and the like, not all trusteeships are fiduciary in character. (*Frank* v. *Frank,* 305 Ill. 181; *Albrecht* v. *Hunecke,* 196 id. 127.) A fiduciary relationship does not exist in case of a mere naked or dry trustee who has no duty to perform and stands in no relation of influence over the *cestui que trust,* though those relations are often spoken of as trusts and as constituting a species of constructive trusts.. They can be so called by way of analogy or metaphor, only. Such a trustee is one only to the extent of his obligation. (Perry on Trusts—7th ed.—sec. 199; 3 Pomeroy's Eq. Jur.—4th ed.—sec. 1046; *In-*

*low* v. *Christy,* 187 Pa. St. 186, 40 Atl. 823; *Frank* v. *Frank, supra.*) In the early English case of *Knox* v. *Gye,* 42 L. J. Ch. 234, the distinction between a trustee under a fiduciary relationship and a dry trustee was pointed out, and it was there held that though the vendor under a contract of sale might be called a trustee, he was trustee only to the extent of his obligation to perform the agreement between himself and the purchaser.

We are of the opinion that the trust relationship here involved, if it be such, is not of that fiduciary character which would prohibit Mintz from purchasing the Kaplan interest for himself and that the bill of appellant cannot be maintained on that ground. In the absence of any fraud— and none is here charged—such a trust, if it exists, is, as well put by Pomeroy in his work on Equity Jurisprudence, (vol. 3, 4th ed. sec. 1946,) rather in the nature of an express trust. Cases cited by appellant are those involving a fiduciary relationship, as trustee and *cestui que trust* in an active trust, guardian and ward, executors and heirs, and the like. Appellant cannot recover on the ground that a constructive trust arises here.

Appellant's entire interest in this lawsuit is based on his contract, and the primary question involved is one of the construction of that instrument and its bearing on the Mintz-Kaplan contract. As we have seen, there is nothing in his contract providing that he be given an opportunity to purchase the Kaplan interest with Mintz. As previously stated, it is argued that since he is required to share with Mintz the expense to which Mintz is put in the acquisition and operation of the property under the Mintz-Kaplan contract, it is inequitable to hold he should not share in all the benefits arising from that contract. The short answer to this is that such was his contract. Had it been the purpose of Mintz and Englestein that the latter should share in the option of the Mintz-Kaplan contract, the simplest way to evidence that intention would have been to put it in the

Mintz-Englestein contract. That contract was for the purchase of one-fourth interest in the property and set out Englestein's obligations as a consideration for that purchase.

Counsel earnestly argue, however, that a correct construction of the Mintz-Englestein contract will show that it was the intention of the parties thereto that Englestein should have this benefit of the Mintz-Kaplan contract. Courts of equity may not, under the guise of construction, make a new or different contract for the parties. (*Gibbs* v. *People's Nat. Bank,* 198 Ill. 307; *Clark* v. *Mallory,* 185 id. 227.) The circumstances which courts may consider in determining the construction of a contract are those arising in the contract itself—that is, before a court may look at the surrounding circumstances there must be ambiguity in the language of the instrument. Unless such be found in the language of the contract the meaning must be determined from the words used and from no other source. (*Jones* v. *Sacramento Avenue M. E. Church,* 198 Ill. 626.) In construing a contract the words used must be given their well recognized, ordinary meaning, unless it appears from the context of the contract or from the explanation of some ambiguity therein that such was not in accordance with the intent of the parties. Courts may not, because a more equitable result might be reached thereby, construe into a contract provisions that are not there. (*Hageman* v. *Holmes,* 179 Ill. 275; 2 Williston on Contracts, p. 1203.) Courts may not do violence to the words used unless there is established a clear intent of the parties to the contract that the words have been used in other than their usual and ordinary sense. (*Rooks Creek Church* v. *First Church,* 290 Ill. 133; *Wolf* v. *Schwill,* 282 id. 189; *Dowiat* v. *People,* 193 id. 264; *Walker* v. *Douglas,* 70 id. 445.) The application of these rules governing the construction of contracts brings us to a consideration of the second and principally argued point in the case.

Counsel for appellant contend that the meaning of the language of the Mintz-Englestein contract, "this agreement is subject to agreement this day entered into between Kaplan and Mintz and all covenants and agreements therein mentioned," is uncertain and ambiguous, and that it appears from the intention of the parties, as shown by all the circumstances, that this clause should be construed to be an obligation or covenant under which Englestein is to assume his share of the burdens and receive his share of the benefits of the Mintz-Kaplan contract. We are unable to see in the language of this clause any ambiguity or unusual use of terms. The fact that there may be unexpected results arising out of the use of language is not sufficient to justify a holding that the language used is ambiguous unless it is clearly shown that neither party expected the results which arose. Any claim that both parties in this cause expected a different construction of the "subject-to" clause of the contract than its usual one is not supported by the evidence. The fact, if it be a fact, that Englestein expected a different construction is not sufficient to justify the application of an unusual construction of such language. The words "subject to," used in their ordinary sense, mean "subordinate to," "subservient to" or "limited by." There is nothing in the use of the words "subject to," in their ordinary use, which would even hint at the creation of affirmative rights. Those words were discussed by this court in *Consolidated Coal Co.* v. *Peers,* 166 Ill. 361. The question was whether the words "subject to the agreements in the lease" imposed a personal obligation on the assignee of a lease of coal lands. In that case the original lessor brought suit against the assignee of the lessee, claiming that by reason of receiving the grant of the coal from the lessee subject to the terms of the original lease the assignee thereby became liable to pay the rents and royalties which were payable to the original lessor. The court in that case said: "There are several considerations that lead us to the con-

clusion that the words 'subject to the agreement,' etc., used in the deed of August 11, 1886, do not import a covenant on the part of the assignee to personally pay all rents or royalties that may accrue during the term: First, the weight of authority is otherwise; second, the rule deducible from the decisions of this court in analogous cases is otherwise; third, as has been suggested in some of the cases, it is the duty of a party who intends by a deed to bind another by a covenant in a former formal instrument to insert such covenant in the deed in such distinct and intelligible terms as that the party to be bound cannot be deceived and not call upon the courts to infer such a covenant from equivocal words, which were probably understood by one party in a sense different from that sought to be ascribed to them by the other; fourth, the assignee always takes the estate *cum onere*—that is, he takes and holds it subject to the agreements agreed to be performed by the lessee—and it is difficult to perceive why, upon sound legal principle, the mere expression of this legal implication should create a personal contractual obligation which the legal implication itself would not create." The same construction is given to the words "subject to" in cases of the purchase of property "subject to" a mortgage. The rule is that the purchaser is not bound by those words to pay the mortgage. *Crawford* v. *Nimmons,* 180 Ill. 143.

The words "subject to" were also considered by the Supreme Court of Wisconsin in *Davidson* v. ·*VanPelt,* 15 Wis. 375. In that case VanPelt and McClurg entered into a written agreement in which it was recited that McClurg had purchased certain lots for the equal benefit of himself and the defendant, VanPelt, and that each was to have an undivided one-half interest in the property. McClurg agreed to give VanPelt a warranty deed of an undivided one-half interest when VanPelt required it. The agreement contained the language "said agrement is subject only to another agreement" of the same date made by McClurg

with one Ann E. Hurlbut, on the fulfillment of which she was to be entitled to an undivided one-third of the lots and McClurg and VanPelt each to be entitled to one-third. McClurg bought the interest of Ann Hurlbut and then assigned his interest to Davidson, who brought suit against VanPelt to recover the balance of the purchase price, on the ground that McClurg was a trustee and therefore took the Hurlbut interest for VanPelt as well as himself and VanPelt therefore should respond to that extent. It was there argued that McClurg was a trustee and could not purchase and hold the Hurlbut interest for his own benefit, but it was held that there was nothing in his agreement with VanPelt to prevent his so doing, and that VanPelt's interest was measured by his contract.

There is nothing in the contract or the circumstances shown in evidence in this case justifying an application to the "subject-to" clause of the contract of a construction different from the ordinary use of the terms. The right to purchase the Kaplan interest was not in itself a contract to purchase but an option depending on Kaplan's determination to sell. Mintz assumed no responsibility to take the Kaplan interest, nor could he compel Englestein, under the Mintz-Englestein contract, to take one-half of the Kaplan interest in case Mintz decided to purchase it, and to that extent such a contract, if it were to be called a contract, was lacking in mutuality. Whether Kaplan could require Englestein to transfer his one-fourth interest under the Mintz-Kaplan contract, since Kaplan consented to the sale of that interest to Englestein, is a question not arising here and is one unnecessary to decide. If Englestein were to be so bound, however, it seems clear that his obligation in that regard must arise out of his contract and not out of any other relationship existing between him and Mintz.

Counsel on both sides argue somewhat at length the priority in point of time of execution of these contracts. As we view that matter it is of no consequence. It is evi-

dent that all of the parties understood, when each of the contracts was entered into, just what was being done as to the other contract. They were all executed the same day, and in our opinion the time of their execution bears no decisive significance in this lawsuit.

The able and very elaborate presentation of arguments for appellant contains many ramifications of argument, sometimes labored, sometimes ingenious, and it would be interesting to discuss them all could such be done within the limits of this opinion, but we have indicated what in our opinion are the central, controlling questions and have discussed and decided them.

We are of the opinion that the chancellor did not err in dismissing the bill for want of equity, and the decree will be affirmed.

*Decree affirmed.*