(No. 30080.—

CLARA McCRILLIS, Admx., *et al.,* Appellants, *vs.* DENA UTTERBACK *et al.,* Appellees.

*Opinion filed September 18, 1947.*

ALBERT E. ISLEY, of Newton, for appellants.

W. A. McCARTY, (P. G. McCARTY, of counsel,) both of Robinson, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Jane Coulter died intestate April 25, 1941, and before her death conveyed part of her real estate and personal property to her foster daughter, Dena Utterback. Mrs. Coulter was a widow, had no children, and her only heirs were brothers and sisters, and children of deceased brothers and sisters. These heirs, with the exception of one brother, brought an action in the circuit court of Crawford county to set aside the deed and the transfers of personal property to Mrs. Utterback, charging that Mrs. Coulter was old and ill, and unable to transact ordinary business; that a fiduciary relationship existed between the deceased and Mrs. Utterback, and that the latter obtained said conveyances by undue influence and by fraud. Plaintiffs pray said deed and transfers be set aside, and that partition of said real estate, and other real estate not involved in this action, be made among the heirs. The defendant Dena Utterback denies all of the allegations of the lack of mental capacity upon the part of Mrs. Coulter, or of undue influence by reason of a fiduciary relationship, and denies all fraudulent

acts and prays that the relief of the plaintiffs be denied. The case was tried before the chancellor, who, after hearing the evidence, dismissed the complaint for want of equity. A freehold being involved, the plaintiffs appeal directly to this court.

The property was willed to Mrs. Coulter by her husband, who died in 1939. Dena Utterback was raised by the Coulters from the time she was a small child, and remained with them until she was married and moved away. All of plaintiffs' witnesses, with the exception of a former tenant and a banker, were the relatives of Mrs. Coulter or of her husband. There is no evidence of a fiduciary relationship other than such as could be inferred from the relationship of parent and child. There is no proof of influence, undue or otherwise, used by Mrs. Utterback, nor of any fraudulent acts or statements by her. The evidence offered by the plaintiffs all related to the mental ability of Mrs. Coulter to understand and make the transfers to her foster daughter.

Mrs. Coulter was past eighty years old, was feeble and had heart trouble. When she became so ill that she could not take care of herself she employed a nurse, who stayed with her until she died. Mrs. Utterback heard of her illness, and she and her husband came from their home in Michigan to be with her. Plaintiffs' witnesses were all elderly people, who testified as to her mental weakness, but, despite their opinion that she was unable to transact ordinary business, all but one related circumstances showing that Mrs. Coulter knew them and conversed about current topics, but was physically frail and ill. Several of these witnesses, who were relatives of the husband, related circumstances indicating they believed there was an understanding that the husband's property would ultimately be given to the husband's heirs by Mrs. Coulter. One witness, a cousin of Mrs. Coulter, who was a doctor, testified positively she was senile and incapable of doing business.

On the defendants' behalf the evidence shows Mrs. Coulter was old and weak, but perfectly competent mentally, and wished to give some of her property to her foster daughter, and this without solicitation from the latter. The brother, who would not join in the suit as a plaintiff, visited his sister about twice daily, and testified that shortly before making the deed on April 9, 1941, Mrs. Coulter told him she wanted to deed to this girl (Dena) some property, and he said it would be perfectly all right; and she told him later in the day that she had given her some property, and when Mrs. Coulter asked him if it suited him he replied it suited him if it did her. He further testified she knew exactly what she was doing. The trained nurse who stayed with her said she was conscious until she died; that she knew people; knew the nurse and knew what she wanted, and that her mind was good up to the last. Several neighbors testified positively to the same effect.

On the day of the transfer the notary was called to Mrs. Coulter's house. Mrs. Utterback and a Mr. Davis were present at the time, and other persons were in an adjoining room. The description of the property was given to the notary by Mrs. Utterback; he prepared the deed and read it to Mrs. Coulter; it was made to Mr. and Mrs. Utterback as joint tenants. He explained it to her and she signed it, and also signed title papers to the automobile and the transfer of five shares of bank stock. Mrs. Coulter paid the notary a fee for coming out. He was of the opinion Mrs. Coulter was of sound mind on that date. His statement is corroborated by the witness Davis, who was present and acted as a witness to the signature, and by two others of the family, who heard the conversation from an adjoining room.

The details of the transfer of the bank account and of the giving of a check for $1000 to Dena Utterback are not disclosed, other than that the banker recognized and

accepted the signature of Mrs. Coulter. It is a singular circumstance that a woman who was claimed to be at the point of death and senile, could write her name so well it was not questioned by her bank. The trial judge summed up the facts "as far as mental condition went she was just another old person."

The principles applying to this case are well settled. A fiduciary relationship does not obtain between a parent and a child as a matter of law. (*O'Malley* v. *Deaney*, 384 Ill. 484.) The burden of proving facts from which a confidential and fiduciary relationship arises is on the party seeking to set aside the conveyance to establish the relationship. The proof must be clear, convincing and so strong as to lead to but one conclusion. (*McGlaughlin* v. *Pickerel*, 381 Ill. 574; *Stewart* v. *Sunagel*, 394 Ill. 209.) It is aptly said in *Dyblie* v. *Dyblie*, 389 Ill. 326, that to prove a fiduciary relation special confidence and trust on one side and dominance and influence on the other must be shown.

A conveyance from a parent to a child, which for practical purposes is what occurred here, cannot be presumed to be the product of fraud or undue influence from the mere fact of the relationship. Fraud or undue influence in fact is needed to set aside such a conveyance. (*Newman* v. *Workman*, 284 Ill. 77; *Chance* v. *Kinsella*, 310 Ill. 515.) In such cases the conveyance constitutes a gift or voluntary settlement, for which natural love and affection is sufficient. (*Brock* v. *Stines*, 258 Ill. 346; *Rasch* v. *Rasch*, 278 Ill. 261.) And it has been further held that influence acquired through affection is not wrongful, and a deed will not be held invalid on account of it. (*Stewart* v. *Sunagel*, 394 Ill. 209; *Roche* v. *Roche*, 286 Ill. 336.) The proof in this case as to the fiduciary relationship and fraud wholly fails to meet these requirements of the law, thus leaving for consideration only the question of

the mental capacity of Mrs. Coulter to transact the business involved.

In a complaint to set aside a deed the burden of proving the allegations rests upon the one asserting them. (*Brenneman* v. *Dillon*, 296 Ill. 140.) And the test of the mental capacity of a grantor to make a valid deed is that he be capable of understanding in a reasonable manner the nature and effect of the act in which he is engaged. (*Essary* v. *Marvel*, 274 Ill. 576; *Campbell* v. *Freeman*, 296 Ill. 536.) In the *Campbell case* we held that old age, eccentricities, and even partial impairment of the mental faculties is not necessarily sufficient to set aside the deed; and if the grantor has sufficient mental capacity to comprehend the nature of the transaction in making the deed and its effect and meaning, it will not be set aside.

We have examined the evidence of all of the witnesses in this case, and, aside from the respect which we should give to the views of the chancellor, feel that it amply shows that Mrs. Coulter was not only able to understand the nature of the transaction, but desired to make a voluntary transfer in the nature of a gift to her foster child. To our mind, the plaintiffs wholly failed to establish their case by the proof required in such cases. The chancellor heard the testimony in open court; he was in position to see and hear, and more properly weigh the testimony of each witness. Where this occurs we will not disturb the findings of the chancellor unless they are manifestly against the weight of the evidence. (*Finney* v. *White*, 389 Ill. 374; *Belleson* v. *Ganas*, 394 Ill. 557.) We are satisfied that the decision of the chancellor was in accord with the evidence, and find no reversible error in the trial of the case.

The decree of the circuit court of Crawford county is accordingly affirmed.

*Decree affirmed.*