*In re* ESTATE OF FELIX MELVIN RAY, Deceased—(MAE LOMAN, Respondent-Appellant, Cross-Appellee, *v.* BURTON R. CROCKER, Admr. of the Estate of Felix Melvin Ray, Deceased, Petitioner-Appellee, Cross-Appellant.)

(No. 71-41; )

Fifth District—September 1, 1972.

Joseph W. Hickman, of Benton, for appellant.

Loren P. Lewis, of Benton, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal and cross-appeal from a judgment of the trial court rendered following a non-jury hearing upon a citataion to discover assets. The citation was a proceeding under section 183 of the Probate Act (Ill. Rev. Stat., ch. 3, sec. 1 *et seq.*), brought by the administrator of decedent's estate for an order requiring respondent, a daughter of the decedent, to turn over to the administrator as property of the estate the sum of $11,200 which represented the proceeds of a fire insurance policy received by decedent prior to his death as a result of a loss by fire of a farm dwelling and its contents.

Felix Melvin Ray was 80 years of age when he died intestate on May 25, 1967. At the time of his death he was in a nursing home where he had been for approximately 10 days. Before that he had undergone surgery in the Pinckneyville Hospital. Mr. Ray's wife, who had inherited from her parents, a 65-acre tract improved with a dwelling died in 1961 seized of 61 acres of the tract. She and Mr. Ray had previously, about 1938, conveyed 4 acres of the tract to their daughter, the respondent, who with her husband, built thereon a home which they occupied for about 29 years prior to the death of Mr. Ray. The home of respondent was in close proximity of the home of her father, which was located on the remaining 61 acres.

Following the death of his wife, Mr. Ray continued to occupy the dwelling as his homestead. Shortly after the death of his wife in 1961 Mr. Ray sold another 50 acre tract of land that he and his wife had purchased to pay some debts. With the proceeds of this sale he opened a bank account in his name and the name of respondent as joint tenants. This fact was known by some, if not all, of the other children of Mr. Ray.

Mae Loman, the respondent, was one of six living adult childen of Mr. Ray. She had helped look after her mother during her lifetime and continued to look after her father after the mother's death. She never deposited any of her own funds in the joint bank account nor did she make any withdrawals other than for the use or benefit of decedent. Mr. Ray received social security in the amount of $44.00 a month and his children either expressly or tacitly allowed him to keep all the rentals and profits from the 61 acre tract. Mr. Ray paid the taxes and his bills from his social security and the proceeds of the farm rental. Practically all of Mr.

Ray's business affairs were managed by respondent, Mae Loman, with the knowledge of the other five children.

In 1961 Mr. Ray had purchased a homeowners insurance policy with the Aetna Insurance Company. The policy was issued to Mr. Ray in his name solely and provided coverage in the amount of $8,000 on the dwelling and $3,200 on the contents. Mr. Ray told some of the children that he had purchased the policy. None of the children were ever called upon to pay any part of the taxes or insurance premiums on the property or in any other way to contribute to the support or maintenance of decedent.

In 1960 Mr. Ray was diagnosed as having a carcinoma of the prostate. He was treated for this condition over the years and until his death by his family doctor. In 1967 he experienced difficulty in urination and this led to his hospitalization and surgery to relieve the condition. While he was in the hospital his home burned. The doctor testified that the news of the loss of his home caused Mr. Ray to be depressed and led to his ultimate deterioration.

About a month after the fire a check in the amount of $11,200 representing the policy proceeds was sent by the insurance agency to Mr. Ray. Respondent took the check to her father who was then in the nursing home. He endorsed it, and, according to respondent's testimony, gave it to her and told her to deposit it in their joint bank account, that he wanted her to have it.

Following Mr. Ray's death respondent and two of her brothers petitioned the circuit court for letters of administration upon his estate to issue to respondent. Two other sisters and a brother objected and filed their own petition for letters to issue to one of them. The court rejected both petitions and appointed Burton R. Crocker, who was then the Public Administrator of Franklin County, as administrator of the decedent's estate. Even though Mr. Crocker is no longer the Public Administrator he continues as administrator of the estate. Mr. Crocker was also the agent of the Aetna Insurance Company who sold the insurance policy to Mr. Ray and who had mailed the check representing the policy proceeds to Mr. Ray. Respondent deposited the $11,200 check in the joint account, immediately transferring $5,000 to a bank in Pinckneyville in anticipation of expenses arising from Mr. Ray's illness.

Trial issues were drawn upon the amended petition for citation which recited the tenancy in common of the 61 acres, charged that respondent had in her possession the proceeds of the $11,200 draft, and alleged as alternatives three separate grounds for recovery of the draft proceeds by the estate; first, the $11,200 was collected by Felix Melvin Ray as constructive trustee for himself and the other tenants in common, sec-

ondly, that decedent was aged, senile, recovering from a serious operation, in a state of depression over loss of his home and belongings and under the influence of sedatives and drugs, and as a consequence was of unsound mind and without legal capacity to make a gift, and thirdly, that respondent stood in a fiduciary capacity with decedent, that the gift was not the free and voluntary act of decedent but was obtained through undue and improper influence and was therefore presumed to be, and was, fraudulent.

Following a hearing an order was entered wherein the court found that the total proceeds of $11,200 received by Felix Melvin Ray from the insurance company represented the payment of $3,200 for personal belongings of decedent and $8,000 for the value of the residence at the time of the loss. Further, that decedent was a tenant in common in possession of the 61 acre farm and managed the farming operation for the benefit of himself and the other tenants in common. The court further found that at the time the loss occurred and at the time the proceeds of the policy were issued to Felix Melvin Ray and at the time of his death he was a constructive trustee of that portion of the proceeds of the insurance collected by himself which represented payment by the insurer for the loss of the residence. As constructive trustee of the $8,000 for the persons who owned the residence as tenants in common decedent had no authority to transfer by gift or otherwise such proceeds to the respondent other than to transfer the portion of the proceeds which represented his one-third interest, or $2,666.66, and that the respondent should be directed to pay over to the administrator of the estate the sum of $5,333.34 which represents the portion of the proceeds held by decedent as constructive trustee for which he had no authority to make a gift. The order directed that respondent deliver the sum of $5,333.34 to the administrator of the estate to make distribution thereof to the tenants in common other than decedent. The order implicitly recognized the capacity of decedent to make an *inter vivos* gift and permitted the gift of the proceeds of the check which represented the loss of decedent's personal property and decedent's one-third interest in the residence to stand.

Respondent appeals with the contention that there was no evidence of actual fraud or breach of a confidential relation and the court was therefore in error in impressing a constructive trust upon the portion of the insurance proceeds paid for the loss of the residence. She argues that the children had a legal duty to support their father, the decedent, and accordingly the income of the farm represented a gift to him. Accordingly, the insurance premiums were paid with decedent's own funds and not with common funds of the tenants in common, and since de-

cedent had the largest insurable interest in the property the entire policy proceeds were his. The respondent-appellant further argues that in any event that the insurer was the only one who could complain of making a payment for an uninsurable interest and no such complaint was made.

The petitioner-appellee has filed a cross-appeal from the order of the trial court arguing that error was committed when the trial court refused to order the entire insurance proceeds check of $11,200 to be returned to the administrator. It is his contention that the evidence shows that the *inter vivos* gift from decedent to respondent is invalid because the decedent lacked the mental capacity to make a gift and that it was not the voluntary act of decedent but was obtained by undue and improper influence of respondent in violation of the confidential and fiduciary relationship that existed between decedent and respondent.

We affirm the order of the trial court.

Dealing first with the cross-appeal, we believe the contentions of petitioner-cross-appellant to be essentially concerned with the weight of the evidence and the credibility of the witnesses. He contends that the evidence is sufficient to show as a matter of law that the respondent-appellant occupied a fiduciary relationship to her father. In his oral remarks delivered at the conclusion of the hearing the trial court stated, "* * * I think it became the burden of the petitioner to prove that he was incompetent. I realize the evidence is in dispute, but I don't think the evidence, as shown by a preponderance of the evidence, [shows] that the old gentleman was incompetent." Cross-appellant argues that the court erroneously cast the burden of proof of competency upon him instead of upon the respondent-appellant because of the fiduciary relationship.

■■ Whenever the validity of an *inter vivos* gift is questioned it is the donee, not the donor or his representative, who has the burden of establishing the elements essential to uphold the validity of the gift. As stated in *Dudley v. Uptown National Bank of Moline*, 25 Ill.App.2d 514, 167 N.E.2d 257, "* * * the proof must be clear, satisfactory, unequivocable and convincing—there should be no uncertainty as to either the claimed interest or the claimed delivery." (Also see *In re the Estate of Skinner*, 111 Ill.App.2d 267, 250 N.E.2d 295.) If it appears that the donee occupies a confidential relationship or a fiduciary capacity, then the proof must be even more clear, convincing and unequivocal. *In re the Estate of Skinner, supra.*

■■ We do not believe the decision of the trial court ran counter to these decisions since it cannot be said that, as a matter of law, the respondent stood in a fiduciary relationship to her father. Rather, it was

a question of fact to be determined from the evidence and we do not believe that upon the record presented here the trial court was in error in failing to find that the fiduciary relationship did in fact exist.

■■ While it must be granted that the evidence would support a finding of physical and mental incapacity to make an *inter vivos* gift, there was also substantial testimony to the contrary, including that of decedent's physician, a hospital administrator, a practical nurse, and a nurse's aid. The evidence is sharply conflicting on the point. The trial judge heard the testimony of a large number of witnesses and found that the petitioners had failed to establish by a preponderance of the evidence that Felix Melvin Ray was incompetent at the time of the gift and that there had been a failure to sustain the burden of proof on the point. It is, of course, peculiarly within the province of the trial judge to make findings of fact. It is he who observes the witnesses as they testify and he is in a superior position to judge the credibility of the witnesses and evaluate their testimony. His findings can be set aside upon appeal only if they are contrary to the manifest weight of the evidence. When thus considered we cannot say that the findings of the trial court that decedent was sufficiently competent to make an *inter vivos* gift was contrary to the manifest weight of the evidence and his findings in that regard will be sustained.

■■ In her appeal the argument of the respondent-appellant that the trial court was in error in declaring decedent a constructive trustee of the insurance proceeds is founded on the stated premise that constructive trusts are divided into two general classes, one where there is an actual fraud and the other where there is an abuse of a confidential relationship. However, this premise is incorrect, or, more properly, incomplete. While it is true that a constructive trust may arise out of fraud or the breach of a confidential relationship, the extent of their utilization is by no means restricted to those grounds. A court of equity will raise a constructive trust, even where there is no fraud, whenever the circumstances of the transaction are such that the person who takes the legal estate may not enjoy the beneficial interest therein, as against the other party to the transaction, without violating some established principle of equity. (*Englestein v. Mintz,* 345 Ill. 48, 177 N.E. 746; *Kochorimbus v. Maggos,* 323 Ill. 510, 154 N.E. 235.) Constructive trusts arise by operation of law rather than from an agreement of parties. Whatever their setting, the common component of constructive trusts is their use to prevent unjust enrichment and an unjust enrichment may arise from a variety of situations. (See Scott on Trusts, section 462; Restatement of the Law, Restitution, section 160.) "It is an elemental principle of law, applied in both law and equity courts, that where one person has received

money or its equivalent, which belongs to another, under such circumstances that in equity and good conscience he ought not to retain it, recovery will be allowed. [Citations.] In equity, the theory of recovery is predicated on the imposition of a constructive trust [citations], and the law, on the basis of a quasi-contract, or contract implied in law. [Citations.]" *Board of Trustees of Police Pension Fund of Glen Ellyn v. Village of Glen Ellyn,* 337 Ill.App. 183, 85 N.E.2d 473.

■■■ In this case the decedent was the owner of one-third of the farm as a tenant in common with his six children who each owned a one-ninth interest as tenants in common. As tenants in common the children were also entitled to possession the same as decedent. They, doubtless in recognition of their moral and legal duty to their father, permitted him the exclusive possession of the premises as his residence and to retain the avails of the property. The record does not yield any evidence of any express agreement pertaining to the gift of the proceeds of the farm to the decedent, nor of any agreement whereby the decedent was to have the property insured for the benefit of all owners and pay the premiums from the farming proceeds. One child did, however, testify that it was understood that their father was to keep the place insured out of the farming proceeds. Nevertheless, we think that where one tenant in common is in possession of the commonly owned property and in receipt of all profits from the common property he has a duty to be reasonably prudent in looking after and preserving the common property. Further, that this duty would extend to keeping the property insured for. the benefit of all owners. "A co-tenant in sole possession and receiving all profits derived from the property is deemed to have undertaken certain duties to the other co-tenants and will be required to defray all such expenses at least to the extent of all such profits and rents." (20 Am.Jur.2d, Co-Tenancy Joint Ownership, section 56.) Absent such duty in this case the co-tenant in possession could use the avails of the commonly owned property to obtain insurance to the extent of its full value in his name alone, and upon the loss by fire of such property retain as his own the entire proceeds of the policy. The surrender by the children of the right to possession to their decedent father is certainly a thing apart from the surrender of their entire ownership in the residence. While it is true that children have a legal duty to support their parents, the concept appears in this case only as an afterthought. Such duty cannot be utilized by respondent after the death of the father to support her contention that the avails of the farm were a gift to the father so that his payment of premiums on the insurance policy was with his own funds. The duty to support does not, upon the evidence in this case, override the duty of a tenant in common in possession to use the

441

commonly owned avails of the property in its care and preservation, including the security of insurance which will be protective of the ownership of all the tenants in common. We believe with the trial court that the equities are with the petitioner and were sufficient to declare the decedent a constructive trustee of that portion of the proceeds of the insurance policy applicable to the ownership of the six children.

■■ The appellant has also questioned the jurisdiction of the trial court to render the order which is the subject of this appeal. This argument was not presented to the trial court and accordingly we need not consider it here.

Order affirmed.

EBERSPACHER, P. J., and CREBS, J., concur.