EMIL BRECEL, Plaintiff-Appellant, *v.* ERNA CARLSTEDT *et al.*, Defendants-Appellees.

Second District   No. 77-135

Opinion filed October 19, 1978.

Allen S. Greene, of Wheaton, for appellant.

James McClure, of Elmhurst, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

This action was brought by Emil Brecel, seeking to set aside a quitclaim deed from his mother to herself and his sister, Erna Carlstedt, as joint tenants which was executed approximately two months before the mother's death; or, in the alternative, that the court decree that Erna be declared to be a constructive trustee for the benefit of plaintiff as to one-half of the subject real estate.

The plaintiff has raised five issues. The first is that the defendants did not establish the existence of a valid *inter vivos* gift of the real estate, plaintiff contending the burden is on the donee to prove the essential facts of the gift by clear, convincing and unequivocal evidence. In this connection plaintiff contends that a breach, or abuse, of a confidential relationship was perpetrated on the donor by the donee. The defendant contends that, to the contrary, the presumption of a gift is intended where a mother transfers or delivers her property to a daughter and that one seeking to establish that the gift was not intended is required to show the

absence of such intent by clear and convincing evidence. The second contention of the plaintiff is that the defendant failed to meet the burden of proof establishing the validity of an *inter vivos* gift. Because we feel that the existence of the deed of real estate eliminates the need to prove all the elements of a *inter vivos* gift, we shall consider these two issues together. The third contention of the plaintiff is that it was error for the court to admit into evidence a conversation between the attorney who drafted the deed in question and the donor, Pauline Brecel. The fourth contention is that it was error for the attorney to be called as the court's witness. This contention will not be considered as the attorney for the plaintiff himself asked that that attorney be called as a court's witness. The fifth issue presented is that the decedent lacked the required mental capacity to execute the quitclaim deed in question on August 30, 1972. Subsequently an amended complaint filed herein included the question of personal assets of the decedent and we are advised, and the trial court found, that those assets had been divided between the parties in question. The sole question remaining was whether the determination of the court that the quitclaim deed from the decedent to the daughter was a valid *inter vivos* gift and that there was no abuse, fraud or breach of the confidential relationship between the daughter and her mother was correct.

The decedent, Pauline Brecel, who resided in Elmhurst, Illinois, was 79 years of age at the time of her death. She had three children, Emil Brecel, the plaintiff herein, who resides in California, Erna Carlstedt, a daughter then residing in Lombard, Illinois, and Emma Brecel, a daughter residing in Rome, Italy. The decedent left a last will and testament, which was not probated, which, after the bequest of $2000 to her daughter Emma, left the remainder of her property to be divided equally between her son Emil and her daughter Erna.

The testimony showed that a "close relationship" did exist between Erna Carlstedt, residing in nearby Lombard, and her mother, residing in Elmhurst. Erna took care of her mother's financial affairs and visited with her frequently. In August 1972 Mrs. Brecel was admitted to Elmhurst Hospital and while in the hospital was visited by an attorney in a friendly visit as he had known her since he was a little boy. He saw her again in the hospital on August 30, 1972, bringing with him the quitclaim deed in question. Over objection at trial, he testified that he told her: "You are giving to your daughter an interest in this house and it will be hers upon your death." Mrs. Brecel was released from the hospital and returned home on September 10, 1972. She died on October 20, 1972.

At the outset it is to be observed that the courts have adopted the term "confidential relationship" in a sense different from the ordinary connotation of that term. Obviously a confidential relationship may exist which does not result in litigation. It is the breach of, or the abuse of that

confidential relationship that the courts are referring to when the term is used. An example of this is found in *Ray v. Winter* (1977), 67 Ill. 2d 296, 304, 367 N.E.2d 678, 682, where the court, in discussing a confidential relationship stated:

> "[W]e believe it does support the existence of a fiduciary relationship and its subsequent breach. ＊ ＊ ＊"

Thus, we will consider the expression "confidential relationship" to refer to a breach of, or undue influence of fraud on the part of the donee where the term is used herein.

The appellant argues at considerable length that a confidential relationship increases the burden of proof on the donee of an *inter vivos* gift. This may well be true, however, the detailed requirements of an *inter vivos* gift are not usually gone into in a situation involving a transfer of real property. Cases relating to *inter vivos* gifts relate primarily to personalty. We do not deem it necessary to discuss the issue of what effect a confidential relationship would have on a transfer of land as we agree with the trial court that there was no such relationship between the mother of the parties and Erna Carlstedt, the defendant.

In 1947 the supreme court of this State, in *McCrillis v. Utterback* (1947), 397 Ill. 550, 554, 74 N.E.2d 682, 684, considered the question of a confidential relationship between a parent and a child, stating as follows:

> "The principles applying to this case are well settled. A fiduciary relationship does not obtain between a parent and a child as a matter of law. [Citation.] The burden of proving facts from which a confidential and fiduciary relationship arises is on the party seeking to set aside the conveyance to establish the relationship. The proof must be clear, convincing and so strong as to lead to but one conclusion. [Citations.] It is aptly said in *Dyblie v. Dyblie*, 389 Ill. 326, that to prove a fiduciary relation special confidence and trust on one side and dominance and influence on the other must be shown."

■■ Applying that case to the one before us we find that the contention of the plaintiff that it is incumbent upon the child involved to prove that no confidential relationship existed is incorrect. The defendant herein states, and correctly so, that in a situation where there is a conveyance to a child, the burden is upon the one contesting that conveyance to prove the confidential relationship and the breach thereof or fraud or undue influence exerted by the child in question.

■■ *McCrillis v. Utterback* is still the law in Illinois. As was stated in *Brown v. Moore* (1950), 407 Ill. 618, 623, 95 N.E.2d 856, 859:

> "A conveyance from a parent to a child cannot be presumed to be the product of fraud or undue influence from the mere fact of the relationship. Fraud or undue influence in fact is needed to set aside such conveyance."

See also *Klass v. Hallas* (1959), 16 Ill. 2d 161, 157 N.E.2d 261.

■■ It is true that in those cases where the breach of a confidential relationship question is presented, where the parties are not parent and child, and in those cases where a constructive trust is sought to be established, a different degree of proof is required. It is then incumbent upon the party enjoying that confidential relationship to prove that undue influence, fraud or breach of the relationship did not cause the conveyance in question. That is not the case here.

Plaintiff relies upon the case of *In re Estate of Ray* (1972), 7 Ill. App. 3d 433, 287 N.E.2d 144, where the court stated that it was the burden of the donee to establish the validity of a disputed *inter vivos* gift. As we have indicated, we need not consider the instant case under the *inter vivos* theory in light of *McCrillis*. It is interesting to note, however, that in *Ray* the issue was the disposition of proceeds of a fire insurance policy received by the decedent which he endorsed, gave to the respondent, and was deposited in the joint bank account of the decedent and the respondent. At the time of this action the decedent was the owner of a one-third interest in the property involved. The plaintiffs in that case were tenants in common with the decedent as to a two-thirds interest. The court held, and the appellate court affirmed, that the decedent was a constructive trustee for the persons who owned the residence as tenants in common with him and that he had no authority to transfer, by gift or otherwise, the proceeds which he received other than that portion of the proceeds which represented his one-third interest. The court then directed the respondent to turn over to the estate the sum representing that portion of the proceeds held by the decedent as a constructive trustee. In affirming, the appellate court observed that:

> "The order implicitly recognized the capacity of decedent to make an *inter vivos* gift and permitted the gift of the proceeds of the check which represented the loss of decedent's personal property and decedent's one-third interest in the residence to stand." 7 Ill. App. 3d 433, 437, 287 N.E.2d 144, 147.

■■ As we have often stated, a trial court is in a far better position to hear the witnesses and the testimony adduced than a reviewing court and its finding will not be disturbed unless it is against the manifest weight of the evidence. We agree with the trial court that the plaintiff herein failed to establish the breach or abuse of a confidential relationship between Erna Carlstedt and her mother. Under the authority of *McCrillis*, the trial court finding that no confidential relationship existed between Erna Carlstedt and her mother is affirmed.

Without going into detail, an examination of the record herein more than substantiates the finding of the trial court that Pauline Brecel was possessed of the required mental capacity to execute the quitclaim deed

in question on August 30, 1972. As the trial court stated, "there is no evidence whatsoever that the mental condition of the decedent was in any way impaired." We concur.

As we have indicated above, the attorney who prepared the deed in question was called as a court's witness at the request of the plaintiff. In support of his contention the plaintiff alleges error because the attorney's testimony at trial differed from his statements at deposition. Plaintiff further contends that the attorney never stated to Mrs. Brecel that she was giving up a present interest in one-half of her real estate. To the contrary, in plaintiff's own brief he states that the attorney told her, "you are giving to your daughter an interest in this house that will be hers upon your death." The credibility of this witness was for the determination of the trial court and in the trial court's memorandum opinion it specifically found that:

> "He further stated that the decedent knew that he had come to see her about signing the deed; that he explained to the decedent that by signing the deed that she was giving an interest in the house to the defendant, Erna Carlstedt, and he inquired of her as to whether she wanted to do that and she replied, 'Yes, that the defendant had treated her nicely.' "

We again will not substitute our judgment for that of the trial court. The judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.