*In re* ESTATE OF ANN L. CUNEO, Deceased (Thomas J. Mowinski *et al.*, Petitioners-Appellants, v. Ronald L. Stout *et al.*, Respondents-Appellees).

Second District   No. 2—01—1268

Opinion filed October 25, 2002.

John B. Kincaid, of Mirabella & Kincaid, P.C., of Wheaton, for appellants.

Cynthia Hayes Hutchins, of Law Offices of Cynthia Hayes Hutchins, and John Joseph Malm, of John N. Malm, P.C., both of Wheaton, for appellees Breda Hickey Stout and Ronald L. Stout.

Breda Hickey Stout and Ronald L. Stout, both of Elgin, appellees *pro se.*

JUSTICE O'MALLEY delivered the opinion of the court:

Petitioners, Thomas J. Mowinski and Candida Cuneo Mowinski, appeal the order of the circuit court of Du Page County, finding that a Palm Desert, California, condominium was an asset of the estate of decedent, Ann L. Cuneo, and that two quitclaim deeds purportedly transferring decedent's interest in the property to petitioners were not valid. We affirm.

Respondents Ronald Stout and Breda Stout maintain that the property is an asset of decedent's estate. Decedent's will provides that respondents are to inherit the property. Petitioners assert that decedent gave them the condominium in a conveyance occurring about one year before decedent's death. During the probate of decedent's estate, on March 1, 2000, petitioners filed this action to confirm the ademption of the condominium. Following the denial of petitioners' motion for summary judgment, this matter proceeded to a bench trial.

At the bench trial, petitioners presented evidence concerning the making of the quitclaim deeds. Petitioners presented testimony that two deeds were executed, one on April 19, 1996 (the Friday deed), and one on April 20, 1996 (the Saturday deed). Petitioners' witnesses testified that on April 19, 1996, decedent signed a quitclaim deed conveying the property to decedent and Candida Mowinski jointly. Decedent's

signature was witnessed by the Mowinskis' neighbors, Diane Shroyer and John Somers. The Friday deed was notarized by another neighbor, Vivian Somers. Testimony further indicated that the Friday deed had been prepared by Thomas Mowinski from a blank form he kept in his home office. After the Friday deed had been completed, it was given to Thomas Mowinski for safekeeping.

Petitioners presented further testimony that on April 20, 1996, decedent was dissatisfied with the Friday conveyance and demanded that another quitclaim deed be executed to transfer the property to Candida and Thomas Mowinski jointly. This time, decedent's signature was witnessed by Diane Shroyer and Thomas Mowinski (John Somers had entered the house but remained in the Mowinskis' garage, examining some golf clubs). The Saturday deed was also notarized by Vivian Somers. Once again the Saturday deed was given to Thomas Mowinski for safekeeping.

Candida Mowinski testified that on May 7, 1996, she recorded the Friday deed in California. At this time, the Saturday deed had not yet been recorded. Candida Mowinski testified that she recorded the Friday deed even though it did not represent the wishes of her mother, namely, that title to the condominium be in both Candida and Thomas Mowinski's names.

Thomas Mowinski testified that on August 29, 1996, he recorded the Saturday deed. He testified that the deed had been executed without being dated and that, when he went to record the deed, he was instructed to use that day's date even though the deed had been executed on April 20, 1996.

Respondents presented testimony that substantially impeached petitioners' evidence. Vivian Somers admitted that the stamp with which she notarized the Saturday deed did not exist on April 20, 1996. Elaborating, Somers explained that her notarial commission expired in July 1996 and that she filed her renewal application in June 1996. Somers conceded that she would not have had the stamp with which she notarized the Saturday deed before June or July 1996. Somers nevertheless maintained that she notarized the Saturday deed on April 20, 1996.

Respondents also presented the testimony of Robyn Flannigan, the manager and record keeper for the Notary Public Association of Illinois (NPAI). She testified that her company files the paperwork necessary to complete an application or renewal for a notary public commission. In addition, her company makes the stamps given to its applicants. She testified that she recognized the notarial stamp used on the Saturday deed owing to a unique feature of the software used to manufacture stamps for the NPAI. Flannigan also testified that she

received Somers's application for renewal in June 1996 and that the stamp would not have been made until after the State had renewed the commission, sometime in late June or July 1996.

Respondents also presented testimony from Darlene Hennessy, a "questioned documents" examiner. Hennessy examined the "Ann L. Cuneo" signatures on the two deeds and compared them against three known signatures of decedent from her will. Hennessy concluded that decedent could not be identified as the writer of the signatures on either of the deeds.

Following the presentation of evidence, the trial court determined that respondents had met their burden of proof by clear and convincing evidence and denied petitioners' complaint for ademption. The trial court held that neither of the deeds was valid and that the California condominium was an asset of decedent's estate to be distributed according to decedent's will. Petitioners timely appeal.

Petitioners raise a number of issues on appeal. Petitioners appear to argue that the trial court's decision was against the manifest weight of the evidence because the two quitclaim deeds complied with the formal requisites of California law and respondents failed to carry their burden of demonstrating their invalidity by clear and convincing evidence.

■ As an initial matter, the parties agree upon the choice of law to apply to the facts of this case. "The title to and disposition of real estate either by deed or will is governed by the law of the State where the land is situated." *In re Estate of Barrie*, 331 Ill. App. 443, 447 (1947). Further, in conflicts of law cases, procedural matters are governed by the law of the forum and substantive matters are governed by the law in which the property is located. *Boersma v. Amoco Oil Co.*, 276 Ill. App. 3d 638, 645 (1995). Accordingly, California law will apply to the substantive issues in this case; Illinois law will apply to procedural matters.

■ Petitioners initially argue that the two deeds were properly authenticated under California law. By "authentication," petitioners appear to mean that they introduced sufficient evidence at trial to prove that the certified copies of the quitclaim deeds were accurate and correct copies of those documents. (Petitioners did not produce the original deeds, even though the copies produced at trial included instructions that, after recording, the originals be returned to petitioners.) Petitioners' issue with respect to the authentication of the deeds, however, misses the point of respondents' challenge to the documents. While respondents did suggest that petitioners' failure to produce the originals gave rise to a presumption against petitioners, respondents' main point was that their evidence tended to demonstrate that the

deeds were not validly executed. Petitioners' contentions regarding the authentication of the documents under California law do not shed any light on this issue (or on petitioners' contention that the trial court's finding of invalidity was against the manifest weight of the evidence). Accordingly, we need not further address this argument because it is not relevant or helpful to the issues raised in this appeal.

■ We next turn to petitioners' contention that the trial court's determination regarding the validity of the deeds was against the manifest weight of the evidence. The allocation of the burden of proof is a procedural matter. *Babcock v. Chesapeake & Ohio Ry. Co.*, 83 Ill. App. 3d 919, 928 (1979). A recorded deed raises a presumption that it is valid and effective. *Resolution Trust Corp. v. Hardisty*, 269 Ill. App. 3d 613, 619 (1995). In order to rebut the presumption of validity, the party challenging the deed's validity must present clear and convincing evidence that the deed is not valid. *Resolution Trust*, 269 Ill. App. 3d at 619. When reviewing the trial court's assessment of a factual issue, such as the validity of a deed, we use the deferential manifest-weight-of-the-evidence standard. *Joel R. v. Board of Education of Mannheim School District 83*, 292 Ill. App. 3d 607, 613 (1997). A factual finding, such as respondents' proving the invalidity of the two deeds by clear and convincing evidence, is against the manifest weight of the evidence "where, upon review of all the evidence in the light most favorable to the prevailing party, an opposite conclusion is clearly apparent" or the factual finding is "palpably erroneous and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary and unsubstantiated by the evidence." *Joel R.*, 292 Ill. App. 3d at 613. Moreover, in a nonjury case, the judgment of the trial court will be upheld· if there is evidence in the record to support it. *Brown v. Zimmerman*, 18 Ill. 2d 94, 102 (1959); *Brencick v. Spencer*, 188 Ill. App. 3d 217, 219 (1989). Even though we are proceeding under the manifest-weight-of-the-evidence standard of review, we must keep in mind that we are reviewing the trial court's determination that respondent presented clear and convincing evidence to rebut the presumption that the deeds were valid.

■ A review of all of the evidence shows that the trial court's determination that the two deeds were shown to be invalid by clear and convincing evidence was not against the manifest weight of the evidence. The evidence at trial showed that, on Thursday morning, April 18, 1996, decedent was in California and learned of the death of her brother-in-law, Hugh Stout. She traveled to Illinois and spent the evening in her Addison home with her brother, Larry Lewis. At that time, decedent was an owner of the Columbian Cuneo Funeral Home in Franklin Park, which handled some of the funeral arrangements for Hugh Stout.

The Stouts offered evidence that decedent was taken to her sister, Golda Stout, who had unexpectedly lost her husband. According to respondents, decedent stayed at their home in Elgin on Friday, April 19, 1996, and on Saturday, April 20, 1996.

Gina Lewis testified that she was a funeral director at the Columbian Cuneo Funeral Home. She testified that decedent was at the funeral home on Friday, April 19, 1996. She testified that she lived across the street from decedent's house. She arrived home from work on Friday evening before her father, Larry Lewis, returned from the funeral home with decedent. Gina Lewis testified that it was already dark when she observed her father and decedent arrive at their home. She further testified that it was about three hours after dark when she saw a second vehicle arrive at decedent's home. Gina Lewis testified that she observed that Candida Mowinski had arrived at decedent's home. (Candida Mowinski testified that she saw Gina Lewis when she picked up her mother.)

Evidence showed that sunset occurred at 7:38 p.m. in Addison. The end of twilight occurred at 8:08 p.m. Gina Lewis's testimony shows that Candida Mowinski arrived at decedent's home about three hours after dark, or sometime after 10:30 p.m. on Friday night. According to Candida Mowinski's testimony, she left the Addison house about a half-hour after she arrived (although we note that petitioners believe that this occurred much earlier), or sometime after 11 p.m. Candida Mowinski testified that it is about an hour's drive from Addison to her home in Sandwich. Thus, according to the evidence produced by respondents, decedent could not have arrived at the Mowinski house until some time after midnight, well after the time petitioners testified that the first deed was purportedly executed. This evidence, therefore, calls into question the version of the occurrence described by petitioners.

Next, petitioners' testimony concerning the first deed was significantly impeached. Candida Mowinski testified that, on Friday, April 19, at approximately 6 p.m., she picked up decedent from her home in Addison and drove decedent to the Mowinski home in Sandwich. She testified that it was during the car ride that decedent first broached the topic of giving the Mowinskis the California condominium. Candida Mowinski also testified, however, that the first deed was prepared at 5 or 6 p.m. on Friday, April 19, apparently before decedent expressed a desire to give the Mowinskis the California condominium.

In addition, Candida Mowinski's trial testimony was impeached by her earlier citation testimony. At trial, she testified that decedent spent Thursday night at decedent's Addison home. This testimony

was impeached by her citation testimony in which she testified that she picked up decedent at the funeral home on Thursday and decedent spent that night at the Mowinski house. Moreover, at the citation, Candida Mowinski testified that, on Friday morning over coffee, decedent first broached the subject of transferring the California property (not on Friday evening during the car ride to the Mowinski house). Candida Mowinski explained the difference between her trial testimony and her earlier citation testimony was due to a *déjà vu* experience just before trial which completely changed her recollection of the events of April 18, 19, and 20, 1996.

Similarly, Thomas Mowinski's trial testimony differed significantly from his earlier citation testimony. At trial, Thomas Mowinski testified that decedent did not arrive at his home until Friday evening; at the citation, he testified that he would never forget a shocking telephone call he received on Thursday, April 18, 1996, in which his wife informed him that she was bringing decedent to their home. Thomas Mowinski was surprised because decedent had never before visited the Mowinski home. At the citation, he testified that decedent arrived at his home during the afternoon or early evening of Thursday, April 18, and not on Friday, as he testified at trial. During the trial, he testified that decedent stayed at his home only one night; at the citation, he testified that she stayed at his home both Thursday and Friday nights.

Likewise, John Somers's trial testimony was impeached by his earlier citation testimony. At trial, John Somers testified that the first deed was executed on Friday evening after he had returned from work; at the citation, he testified that the deed was executed late Friday morning. He testified at trial that the deed was signed at the kitchen counter; at the citation, he testified that it was signed in the office. He testified at trial that Candida Mowinski was present when the first deed was signed and that he saw Diane Shroyer sign the first deed as a witness; at the citation, he testified that he was unsure if Candida Mowinski was present when the deed was executed and that he had no recollection of seeing Diane Shroyer sign the deed as a witness.

In addition to the impeachment of the witnesses regarding the execution of the first deed, Darlene Hennessy testified for respondents regarding her examination of decedent's purported signatures on the deed. Hennessy concluded that decedent could not be identified as having written the signature on the first deed. She made this finding to a reasonable degree of certainty.

Regarding the second deed, petitioners' witnesses were again significantly impeached in their testimony regarding the creation and execution of the second deed. The second deed is dated as August 29,

1996, and was notarized in La Salle County, Illinois. Decedent could not have executed the second deed in La Salle County on that date, however, as she was in California attending a birthday celebration.

Petitioners explained the discrepancy by testifying that the second deed was created and executed on April 20, 1996, the day following the execution of the first deed. Thomas Mowinski testified that on August 29, 1996, when he brought the deed to be recorded in California, the recorder noticed that the deed was undated and required him to fill in a date. Thomas Mowinski further testified that he used that day's date, even though the deed had been created and executed on April 20, 1996. Both Mowinskis, Vivian Somers, and Diane Shroyer all testified that Vivian Somers applied her notary seal to the second deed on April 20, 1996. Petitioners' account of the creation, execution, and recording of the second deed, however, was significantly impeached.

The evidence shows that Vivian Somers notarized both the first and the second deeds. Somers's notarial stamp used on the first deed bore an expiration date of July 13, 1996. Somers's notarial stamp used on the second deed bore an expiration date of July 13, 2000. Ordinarily, the fact that Vivian Somers used two different notarial stamps to notarize two different documents would not excite comment, especially where there is no question raised as to whether she was a valid notary at the time of the execution of both deeds. Here, however, the evidence showed that Vivian Somers did not possess the second notarial stamp on April 20, 1996, and that the second notarial stamp had not even been created on that date.

Respondents offered the testimony of Robyn Flannigan, the manager and record keeper for the NPAI. Flannigan testified that the NPAI assists persons who apply to become or renew their commissions as notaries public. The NPAI provides applications and renewal forms, provides bonding for the applicant, and sends the application to Springfield for filing and processing. In addition, the NPAI also manufactures the notarial stamp for the successful applicant. Flannigan testified that the NPAI purchases a listing from the Secretary of State's office that identifies those applicants who are approved and the dates of their commissions. Only after verifying that an applicant has been approved by the state and the date of the applicant's commission does the NPAI create the notarial stamp.

Vivian Somers testified that her commission was due to expire on July 13, 1996. She utilized the NPAI in order to submit her renewal application sometime in June 1996. Flannigan testified that on June 15, 1996, the NPAI received Somers's application for the renewal of her commission. (Somers's renewal application was notarized on June 6, 1996.)

Flannigan testified that she personally created the stamp used by Somers on the second deed. She recognized the stamp due to a unique feature in the NPAI's fabrication process that results in the characters of the stamp not being centered and aligned. Flannigan testified that she made the stamp only after Somers's application had been approved by the state, sometime late in June or early in July. Likewise, Somers admitted on cross-examination that she could not have had the second stamp in her possession until after June 5, 1996. Somers further admitted that she obtained only one stamp in 1996, the one made for her by the NPAI. Thus, the evidence clearly demonstrates that the second deed could not have been notarized on April 20, 1996, because the stamp used to notarize the second deed did not exist on that date. Because petitioners' witnesses testified that on April 20, 1996, they each personally observed Vivian Somers affix her stamp to the second deed, their testimony has been overwhelmingly discredited.

In addition to rendering petitioners' account of the creation and execution of the second deed incredible, the evidence that Somers could not have notarized the second deed on April 20, 1996, casts significant doubt upon petitioners' account of the creation and execution of the first deed. Indeed, the minor inconsistencies among the witnesses that normally would be insignificant take on much greater significance, especially in light of the fact that respondents presented evidence to suggest that decedent was not at the Mowinski house in time to execute the deed as asserted by petitioners.

In addition to the devastating effect of the evidence of Somers's inability to have notarized the deed on April 20, 1996, the credibility of Vivian Somers and Diane Shroyer was further compromised when they admitted that their affidavits on a purported will of decedent were false. At trial, respondents presented respondents' exhibit 8, which was a will purportedly executed by decedent in July 1996 and which was denied admission to probate. Vivian Somers notarized the document and Diane Shroyer witnessed the execution of the document. At trial, Vivian Somers testified that she notarized the document even though one of the witnesses did not sign it in her presence. Similarly, Diane Shroyer admitted at trial that she was not present when the other witness signed the document, contrary to her affidavit included on the document. Thus, both Somers and Shroyer admitted that they were untruthful in making their representations on the document purporting to be decedent's will, and these falsehoods impeach their testimony at trial.

In addition, the Mowinskis were unable to explain why, if the second deed transferred the California property to them jointly, decedent executed another will devising the same property to them

that she had already transferred to them via the second deed. The will was purportedly executed three months after the Mowinskis had been given the California property.

Moreover, Hennessy testified that, with regard to the second deed, she was also unable to identify decedent as the writer of the signature on the deed. She also held this opinion to a reasonable degree of document examination certainty.

The second deed also directed the recorder to return the original to the Mowinskis' home in Sandwich following its recording. The original of the second deed was never produced, either to respondents, Hennessy, or the trial court.

In addition to the foregoing information presented to the trial court, we note that the deeds themselves do not correctly indicate the number of the condominium unit. Instead, both deeds identify the condominium number as "71" and not "471." This error on the face of each deed does not, standing alone, invalidate the deeds. It is, however, a relevant item of information for the trial court to consider.

The foregoing recitation of the evidence demonstrates that the trial court had before it ample evidence from which it could conclude that respondents had met their burden of proving the invalidity of both deeds by clear and convincing evidence. The demonstration that Vivian Somers could not have notarized the second deed on April 20, 1996, with a stamp that did not exist at that time also serves to cast doubt upon all the witnesses' testimony because they testified that Somers notarized the document in their presence. Further, it casts doubt on the remainder of their testimony concerning the first deed as well. Respondents presented evidence, which, if believed, flatly contradicted all aspects of petitioners' version of the events surrounding the making of the two deeds. We hold, therefore, that the trial court's determination that respondents had proved by clear and convincing evidence that the two deeds were invalid was not against the manifest weight of the evidence.

Petitioners' primary argument is that the trial court erroneously believed respondents' evidence and discredited petitioners' evidence. Petitioners' brief recapitulates petitioners' version of the creation of the deeds. Through their recapitulation of the evidence, petitioners appear to argue that theirs is the only credible evidence presented to the trial court. In effect, petitioners ask this court to reweigh the evidence in order to reach a decision in petitioners' favor. This we cannot do. Our review is deferential to the trial court's factual determinations, as it was in the better position to view the witnesses during their testimony and to make the necessary credibility determinations. A reversal of the trial court's judgment in this case would amount

only to a substitution of our judgment for that of the trial court and this is not our proper function. *Brencick*, 188 Ill. App. 3d at 220.

We next will examine each of petitioners' remaining arguments in detail. Petitioners contend that respondents' claim that decedent could not be identified as the signatory of the two deeds fails in light of the testimony of the Mowinskis, Somerses, and Shroyer. This contention, however, misapprehends the effect of the evidence presented by respondents. Respondents clearly and convincingly showed, as outlined above, that petitioners' version of the creation of the deeds could not have happened as petitioners claimed. In addition, respondents demonstrated that decedent could not be identified as the signer of the deeds. Petitioners are merely asking this court to substitute its judgment and accept the testimony of their witnesses and reject the factual resolutions made by the trial court. We decline petitioners' invitation.

Petitioners argue that the notarization of the deeds is irrelevant because, under California law, notarization is not necessary where the witnesses testify about the making of the deed. Petitioners' argument misses the point of respondents' attack on the notarization. Respondents showed that Vivian Somers's testimony was not accurate concerning the preparation of the second deed and that, therefore, the second deed could not have been notarized by Vivian Somers on April 20, 1996, as she and the other witnesses testified. This fact renders the testimony of all of the witnesses suspect as they all testified that they observed Vivian Somers notarize the second deed. The notarization issue is not raised to show that, as a result of a flawed notarization, the deeds are invalid; rather, it demonstrates that Somers's and the others' testimony is incredible or untruthful and calls into question the very validity of the deeds themselves.

Petitioners also question the testimony of Hennessy, the document examiner. Petitioners emphasize the areas in which Hennessy's opinion was weak or inconclusive. Petitioners do not, however, challenge the admissibility of Hennessy's opinion. Their arguments go to the weight of Hennessy's opinions, and it falls within the province of the trial court to accept or reject Hennessy's opinions and their effect on the trial court's determination of the factual issues in this case. Therefore, while petitioners do properly note weaknesses in the testimony, our review of Hennessy's testimony shows that it is not so infirm as to require its rejection as a matter of law. Petitioners, once again, effectively ask that this court substitute its judgment for that of the trial court, and this we may not do.

Petitioners next argue that respondents' evidence concerning where decedent spent the night of April 19, 1996, did not rise to the level of clear and convincing evidence that decedent lodged with the

Stouts on that night. Petitioners suggest that the testimony of their witnesses concerning this issue is more credible. We have carefully reviewed the evidence as set forth above. Further, this issue involves a factual resolution on the part of the trial court. Although there is no explicit finding in the record, based on our analysis set out above, the trial court could have accepted respondents' testimony concerning decedent's lodgings on the night of April 19. This conclusion is supported by evidence in the record. As petitioners merely ask this court to find that their version is preferable to respondents', petitioners are asking us to substitute our judgment for that of the trial court on a factual matter. We decline to do so.

Petitioners next argue that the two deeds complied with the substantive requisites for validity under California law. Specifically, petitioners state that, taken together, the deeds sufficiently described the property to avoid invalidity. Additionally, petitioners argue that the fact that the second deed apparently was wrongly dated or undated does not affect its validity. Petitioners also argue that the certified copies of the deeds are sufficient to prove the contents of the original deeds, that petitioners did not need to establish donative intent under California law, that delivery of the deeds could be presumed due to their recordation, and that, because there were no reservations in the body of the deeds, their presumed delivery was effective to convey the properties. Even if we were to accept these arguments as correct, the arguments do not address respondents' evidence demonstrating that the second deed could not have been executed at the time and in the manner averred by petitioners. Respondents showed that the second deed could not have been notarized on April 20, 1996, and, therefore, that petitioners' testimony concerning the second deed was wholly incredible. As this incredibility also affects the credibility judgment the trial court would have applied to the remainder of petitioners' evidence, the trial court could have concluded that petitioners' evidence concerning the first deed was similarly incredible. The arguments advanced by petitioners do not address this issue; rather, petitioners' evidence involves the *prima facie* case for the validity of the deeds. Respondents have clearly and convincingly rebutted that *prima facie* validity and petitioners' arguments do not address this rebuttal. Accordingly, we find that petitioners' arguments are without merit.

Petitioners also argue that the main issue in this appeal is whether respondents successfully challenged an *inter vivos* gift from parent to child. Petitioners suggest that, in order to raise a challenge to an *inter vivos* gift, the plaintiff must allege and prove the existence of a confidential relationship and the breach of that relationship through

fraud or undue influence, citing *Brown v. Moore*, 407 Ill. 618 (1950), *McCrillis v. Utterback*, 397 Ill. 550 (1947), and *Brecel v. Carlstedt*, 64 Ill. App. 3d 875 (1978). We disagree. We note that the cases cited by petitioners set forth the burden of proof to be imposed upon the party challenging the *inter vivos* gift. In addition, these cases stand for the proposition that fraud or undue influence will not be presumed where a parent has transferred property to a child. In *Brown*, the plaintiff argued that the burden of proof was on the respondents to prove that he had freely conveyed to them the property. The court found that, as this was a transfer from a parent to a child, the burden was on the plaintiff to show the invalidity of the conveyance. *Brown*, 407 Ill. at 623. Likewise, in *Brecel*, the court rejected the plaintiff's attempt to place the burden of disproving the existence of a confidential relationship on the child and instead noted that the one contesting a conveyance from parent to child must prove the existence of a confidential relationship and fraud or undue influence or some other ground for setting aside the conveyance. *Brecel*, 64 Ill. App. 3d at 878. Similarly, in *McCrillis*, the court placed the burden of proving the invalidity of the conveyance upon the plaintiff, holding that the plaintiff had to show the existence of a confidential relationship and fraud or undue influence or the grantor's mental incapacity to set aside the conveyance in that case. *McCrillis*, 397 Ill. at 554-55.

Petitioners appear to contend that the only way a conveyance from a parent to a child may be set aside is through showing the existence of a confidential relationship between the parent and the child and then proving fraud or undue influence in securing the transfer. This contention, however, fails to address respondents' theory of the case, namely, that petitioners fabricated the deeds, not that they somehow wrongfully obtained Ann Cuneo's signature upon the deeds. *Brown*, *McCrillis*, and *Brecel* do not involve a situation where the party challenging the transfer is claiming that the deed itself was not produced by the parent. These cases, therefore, are factually inapposite to this case. Neither the parties nor our own research has directed us to a case directly on point. Nevertheless, we cannot accept petitioners' formulation of the pleading requirements to challenge the purported *inter vivos* gift in this case. Petitioners suggest that there is a universal requirement in any case involving an *inter vivos* gift between a parent and child, namely, that the party challenging the gift must plead either fraud or the existence and abuse of a confidential relationship. That allegation, however, is unnecessary where, as here, the allegations pled that there was no actual gift by the parent to the child because the transfer itself was a complete fabrication. Thus, there is no gift and no transfer because Ann Cuneo never made the

transfer. This is different from alleging that she made the transfer as a result of fraud or undue influence.

Here, respondents alleged and proved, by clear and convincing evidence, that the deeds were fabricated and that Ann Cuneo did not execute the deeds or otherwise intend to make a gift of the property to petitioners. Petitioners' arguments regarding the necessity of pleading fraud or undue influence do not directly address the factual situation in this case and, accordingly, we reject them.

We note that petitioners raise a number of other issues in their materials on appeal; however, these issues merely reiterate arguments expressed elsewhere. Further, we have addressed these duplicative arguments above.

In sum, we hold that the trial court's determination that the two deeds were clearly and convincingly proved to be invalid was not against the manifest weight of the evidence.

Therefore, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GROMETER and CALLUM, JJ., concur.